BEAUBIEN v. DETROIT UNITED RAILWAY.

1. Street Railways—Negligence—Personal Injuries—Question for Jury.

In an action against a street railway company for personal injuries, where defendant had placed its cars in the street in such a way as to cut off plaintiff's view to the west, and he was struck and injured by one of defendant's east-bound cars while he was driving his automobile across the tracks to the south between two of the standing cars, there being testimony that no gong was sounded, and that the car was being driven at an excessive rate of speed, the questions of defendant's negligence and plaintiff's contributory negligence were properly for the jury.

2. Same—Negligence—Contributory Negligence.

The bare fact that defendant's motorman in a standing car was in a position where he might have seen the car coming from the west and did not notify plaintiff of its approach was not, as an unqualified proposition of law, negligence on the part of defendant in not so doing, although it might be competent for the jury to consider in connection with other evidence in the case, particularly in relation to the question of plaintiff's contributory negligence.

3. Same—Crossing Street—Contributory Negligence.

The question of plaintiff's contributory negligence in passing close to or far from the standing car was one of fact for the jury, and it was error for the trial judge to instruct them that plaintiff would not be guilty of contributory negligence if in crossing the street he went to the right and around the center of the intersection, though it brought him within 4 or 5 feet of the standing car.

4. Same—Prejudicial Error—Excessive Verdict—New Trial.

Where prejudicial errors are materially reflected in the verdict, the judgment will be reversed and new trial granted.

Error to Genesee; Brennan (Fred W.), J. Sub-

On contributory negligence of driver of automobile at railroad crossing, see note in 46 L. R. A. (N. S.) 702.

212—Mich.—6.

mitted June 16, 1920. (Docket No. 51.) Decided October 22, 1920.

Case by Philip Beaubien against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Carton, Roberts & Stewart,* for appellant.

*Farley & Selby* (*Lombard & Hext,* of counsel), for appellee.

STEERE, J. On January 27, 1919, plaintiff was injured in a collision between the automobile he was driving across defendant's tracks and one of its street cars. The accident occurred in the outer portion of the city of Flint at a point where Durand street extending from the south connects with but does not cross West Court street, along which defendant's street cars ran east and west upon a double-track line, the east-bound cars on the south track and the west-bound on the north track. The double tracks extended west from Durand street a short block to where the pavement ended and the line continued with a single track for about a block further west to a "Y" upon which the cars turned for their run back east towards the center portion of the city. At times more cars coming from the east than the "Y" could immediately accommodate rendered it necessary for them to wait on the west end of the north track near Durand street until those using the "Y" preparatory to their return on the south track had started back.

Plaintiff, who was a resident of Flint for many years and about 56 years of age, had at the time of the accident been driving a taxi in the city for over a year, was familiar with and able to describe conditions on West Court street in that locality with reference to defendant's tracks, use of the "Y" switches,

etc. On the occasion of the accident he took a passenger in his taxi out West Court street and stopped to discharge him on its north side, opposite the easterly side of the north end of Durand street. At that time waiting cars filled the west-bound or north track for a block west of Durand street and while he was discharging his passenger some more west-bound cars arrived and stopped, the first near the east line of Durand street, leaving a space between it and the next car west on that track variously estimated by witnesses to be from about 30 to 40 feet. After his passenger had alighted and paid his fare plaintiff started to cross the tracks southerly between the cars standing on the north track each side of Durand street, to return east on the south side of West Court street. He testified that before starting he looked west along Court street to see if there was any danger, turned to look if the motorman in the car just east of Durand was going to start up and ascertaining he was not remarked to the passenger as he started away that it was "clear" and he was going to turn, held out his hand as a signal and turned south to cross the tracks; that as soon as he passed from between the cars on the north track and turned to look west he saw a car coming at a high rate of speed so close that he could not avoid it by stopping or backing and he instantly put on "full juice" to try and clear it, but it was going about 25 miles an hour and struck his rear right wheel, throwing his jitney to the south and east against a telephone pole and him out upon the ground inflicting injuries, the extent of which is in dispute. The conductor and motorman of the car which struck his auto and his passenger whom he had just left across Court street immediately went to him where he lay upon the ground trying to arise and the conductor helped him to his feet, picked up his "car changer" which lay on the ground and handed it to him. He

put it into his pocket, gave the conductor his name and address, directed that he be taken home and declined a suggestion that he be taken to a hospital. The only visible injury any of those present testify to then observing was a cut on his head from which blood was running down his face. His passenger, who was called by him as a witness, testified, "The only injury I could see was the gash on his head." He was taken home, as he requested, in an automobile, and Dr. O'Neil, defendant's physician, at once sent to care for him. The doctor testified that when he arrived he found plaintiff in bed with cuts over the right eye and on the back of his head, and he complained of the pain in his head; that the doctor dressed his wounds and made an examination, finding bruises at the right of his shoulder blade but none along his back or spine; that plaintiff was then perfectly rational and only complained of his head. Witness did not see him again as he was advised plaintiff had called his own physician. Dr. Guile, who was called to attend plaintiff on December 30th, three days after the accident, testified that plaintiff's wounds had been dressed before he saw him; he thought he found his nose broken and in examining him discovered several black and blue bruises centrally along plaintiff's spinal column. He did not remember whether plaintiff was in bed when he first called, but he then showed evidence of a nervous shock and complained of anterior pain in his chest and the posterior portion of his spine; that the best relief for him was rest, and the pain continued until he went to bed, where he remained for several days; but after he got up and around again the nervous condition continued; he complained that exercise exhausted him and of having pains through his chest "anteriorly and posteriorly." Witness made several examinations of his spine and discovered "an inflammatory condition resulting in a complete fixation

of certain portions of the vertebræ" which "has continued practically since the injury," and which, in the opinion of the witness, "is permanent."

On October 1, 1919, plaintiff began this action in the circuit court of Genesee county to recover damages for personal injuries sustained in said accident, and upon trial thereof was awarded a verdict and judgment against defendant in the sum of $16,832.55. Upon trial defendant moved for a directed verdict when plaintiff rested, and renewed the request at conclusion of all the testimony, moved for a judgment *non obstante* after verdict and thereafter for a new trial on various grounds, saving for review by objections and exceptions adverse rulings thereon.

The grounds of negligence charged in plaintiff's declaration and urged at the trial are, so filling its north track in that locality with accumulated cars standing along the center of the street as to cut off the view of approaching cars on the south track to persons lawfully operating vehicles in the street on the north side of the tracks, negligently running the car which struck plaintiff's auto at a reckless and excessive rate of speed in violation of the limit provided by city ordinance, failure to sound any warning or give notice of its approach, failure to employ and have in charge of its cars at that time and place competent persons to control their movement and operation with requisite regard for the safety of plaintiff and others there lawfully operating vehicles upon the street. In that connection it was contended in substance for plaintiff and the court charged that—

"if the motorman of the car which stopped at the east side of Durand street could, by the exercise of reasonable care and caution, have discovered and known of the approach of the car from the west in time to have warned the plaintiff of such approach, it was negligence on the part of the defendant in not doing so."

Under its various assignments of error it was urged for defendant that a verdict should have been directed in its favor because no actionable negligence by it was *prima facie* shown, while contributory negligence on plaintiff's part conclusively appeared; that the court erroneously and prejudicially charged the jury favorably to plaintiff in certain particulars, and the verdict was grossly excessive.

We are unable to find as a conclusion of law that there was no testimony to carry the question of defendant's negligence to the jury. Plaintiff, who from where he stopped had driven but a short distance to where he was struck, testified that he started slowly, turning to his left on an angle with his right door open, listening and looking if there was any car coming on the south track from the west and could have heard the bell had it been ringing, but he heard none and just as he passed from back of the car on the north track he saw the car which struck him about 40 feet away coming at so high a rate of speed that his only chance to get away was to increase his own speed and try to get across, which he promptly did, but the car was coming down grade "about 25 miles an hour" when it struck his hind wheel. Miss McCloud, who was waiting by the track for a car and saw the accident, testified that she first noticed this car coming from the "Y" and watched it "because it was coming so fast," that it did not sound any gong and was in her opinion traveling 25 or 30 miles an hour; that she worked two years at the Buick auto factory and drove their cars, upon which there were speedometers, had observed speed rates and was familiar with the speed of moving objects. The passenger whom plaintiff had just discharged had been a mail carrier on the street for six years and lived in that locality. He stood within 15 feet of the accident at the time and testified that he judged the car was going 20 miles an hour when

it struck the jitney, thought that if the car had sounded a gong he would have heard it and said, "There was no gong sounded that I can refer to." These facts were disputed by defendant's witnesses, but it cannot be said as a conclusion of law that there was no issue of fact as to defendant's negligence.

Neither can we hold that in contemplation of law it so clearly appears under the undisputed testimony that there was such conclusively shown contributory negligence on plaintiff's part as to bar him from the judgment of a jury upon that issue. It is urged in defendant's brief that plaintiff's own testimony shows him negligent in proceeding to cross those double tracks immediately behind a car standing upon the one nearest to him without having at the last clear chance stopped, looked and listened where looking and listening would be effectual; that he did not, in fact, stop anywhere for that purpose and admitted that where he stopped to discharge his passenger his view to the west was obstructed by cars on the north track and he did not stop again, which it is contended precludes recovery under the rules of contributory negligence stated and applied in *Colborne* v. *Railway*, 177 Mich. 139, and *Sanford* v. *Railway Co.*, 190 Mich. 390. In each of those cases there was a safety zone near the track on the side plaintiffs were approaching where there was an unobstructed view of the cars or train with which they collided. Here defendant had so placed its standing cars in the street as to obstruct plaintiff's view from north of the tracks at or near the crossing it had left clear for travel and which he desired to use. He had stopped at the best point of view opposite this crossing, from the side of the tracks on which he was driving. The narrow strip of 4 feet 8 inches between the tracks was not a safety zone for an automobile. It was but a few feet from where he stopped at the north curb to the tracks upon which he turned. He

was facing west and testified that from there he looked and listened before starting, that the land was a little higher to the west and from where he was he could see cars backing on the "Y," that he did not hear or see any car coming, and said to his passenger "I am clear, I am going to turn," started up and turned southerly to cross indicating his purpose by extending his hand, observed the motorman in the vestibule of the car east of the crossing, had the right door of his taxi on the west side open to better look and listen, which he continued, heard no gong sounded and, if his testimony is true, would have gotten safely across after he saw the car had it not been running at an excessive rate of speed. His discharged passenger, standing within 15 feet of the accident, said he heard no gong sounded and did not know there was a car approaching until he saw it strike the auto, while Miss McCloud, who stood on the south side of the track, was watching the car "because it was coming so fast" and testified "it did not sound any gong as it approached." The attending conditions and controlling facts in this case, according to plaintiff's version, which is the test under defendant's motion for a directed verdict, are more closely analogous to those in *Nichols* v. *Railway Co.*, 203 Mich. 372, and *Fillingham* v. *Railway Co.*, 207 Mich. 644, than in the *Colborne* and *Sanford Cases.* The question of plaintiff's negligence was by the conflicting testimony carried into the domain of disputed facts, the truth of which was for the jury to determine under proper instructions.

Various errors are assigned against the court's charge to the jury, defendant's counsel summing up its grievances in the fifth assignment as follows:

"because in no place in the charge does the court give the defendant's theory of the case nor does said charge admit of any possibility of contributory negligence on the part of the plaintiff. The jury is repeatedly told

that what the plaintiff did was not contributory negligence.   It is a practical direction of a verdict in favor of the plaintiff."

While the omnibus arraignment of the charge in this assignment is in the extreme, not borne out by the charge considered in its entirety and too general for direct consideration, specific portions of the charge against which error is assigned are not entirely free from such imputation.   The bare fact that the motorman of the car which stopped on the east side of Durand street was in a position where he might have seen a car coming from the west and did not notify plaintiff of its approach was not as an unqualified proposition of law "negligence on the part of the defendant in not so doing," as the court instructed the jury, although it might be competent testimony for the jury to consider in connection with other evidence in the case, particularly in relation to the question of plaintiff's contributory negligence.   It was error to instruct the jury that it could be taken as a conclusive test of defendant's negligence.

The court also instructed the jury as follows:

"I further charge you that if the said defendant failed to sound the gong or give warning of the approach of the car in question at Durand street and other intersections with West Court street, it was guilty of negligence."

Durand street joined West Court street on the south and there ended.   Other streets intersecting West Court street were not involved in this controversy.   The jury was given free range by this instruction to base a verdict of negligence against defendant for failure of its motorman to sound the gong and give warning of his car approaching "other intersections with West Court street."

On the subject of plaintiff's contributory negligence the jury was instructed:

"I further charge you, gentlemen of the jury, that a person turning at the intersection of public streets is required by the law of this State to pass to the right and around the center of such intersection, and if you find in this case that the plaintiff, in making the crossing, went to the right and around the center of the intersection, he would not be guilty of contributory negligence, though it brought him within 4 or 5 feet of the standing car."

Durand street and West Court street are not intersecting highways in the sense that they cross each other. Plaintiff was crossing from the north to the south side of Court street to get on the proper side for his return east along it. Just where he was crossing defendant's tracks on Court street with relation to Durand cannot be taken as the test of whether or not he was guilty of contributory negligence. Even assuming it was not so intended or understood, to whatever incident the instruction may have been directed in the connection used, the question of plaintiff's contributory negligence in passing close to or far from the standing car was one of fact for the jury to decide.

Upon this record we are constrained to conclude that the errors noted were prejudicial and are materially reflected in the verdict, entitling defendant to a retrial. As other claimed errors urged by defendant are not of such character as to necessarily occur upon re-trial of the case they are not discussed.

The judgment is reversed, with costs to defendant, and a new trial granted.

Brooke, Fellows, Stone, Clark, Bird, and Sharpe, JJ., concurred. Moore, C. J., did not sit.