## BEAUBIEN *v.* DETROIT UNITED RAILWAY.

1. TRIAL—EVIDENCE—ADMISSIONS—CROSS-EXAMINATION—DIRECTED VERDICT.

    Plaintiff's testimony, on cross-examination, that before starting to drive across the street car track, where his view was obstructed by standing cars, he saw danger, *held*, not tantamount to an admission that he saw the car which struck him coming back from the "Y," requiring a directed verdict in favor of defendant.

2. SAME—EVIDENCE—WITNESSES—CREDIBILITY FOR JURY.

    It was proper to permit plaintiff, on re-examination, to explain what he meant by his statements on cross-examination, and the credibility of such testimony was for the jury.

3. STREET RAILWAYS—CONTRIBUTORY NEGLIGENCE—NOTICE OF DANGER.

    The rule does not require that the traveler must abstain from crossing railroad or street car tracks at all at the peril of being held guilty of contributory negligence because he has notice of danger, but that with such knowledge and notice he must use due care.

4. APPEAL AND ERROR—OBJECTION BASED ON ERRONEOUS CONCLUSION.

    Defendant's objection to an instruction of the court, based upon its erroneous conclusion that plaintiff had admitted that he saw the car which struck him coming, and not otherwise objected to, *held*, without merit.

5. MUNICIPAL CORPORATIONS—ORDINANCES—CLASSIFICATION—STREET RAILWAYS—POLICE POWER.

    An ordinance of the city of Flint, limiting the speed of single-truck street cars to 12 miles an hour, while permitting double-truck cars to run 15 miles an hour, is a reasonable exercise of the police power of the city, within the discretion of the legislative branch of its government, and is not open to the objection that said classification invalidates it.

On duty of operator of automobile when near street cars, see note in 38 L. R. A. (N. S.) 493.

On excessiveness of damages in actions for personal injuries other than death, see note in L. R. A. 1915F, 30.

6. NEW TRIAL — EVIDENCE — HEARSAY — AFFIDAVITS —IMPEACHING VERDICT—COMPROMISE VERDICT.

An affidavit of a physician that one of the jurors had stated to him that the verdict was arrived at by each juror setting down the amount he thought plaintiff should recover and dividing the sum by the number of jurors was hearsay and not competent evidence of what took place in the jury room.

7. SAME—JUROR MAY NOT IMPEACH VERDICT.

The rule inhibiting the oral testimony of a juror in open court for the purpose of impeaching the verdict of the jury is alike applicable to an affidavit of the juror for the same purpose after the verdict is rendered and the jury discharged.

8. SAME—DAMAGES—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

Where there was testimony tending strongly to show that plaintiff was suffering from neurosis as a result of the injury sued on, and had also received a permanent injury to the spine, it cannot be said that a verdict in his favor was against the great weight of the evidence, although the testimony was somewhat in conflict.

9. DAMAGES—EXCESSIVE VERDICT.

A verdict for $10,941.66 cannot be said to be excessive where there was testimony that as a result of the in-juries plaintiff had been unable to work for two years, resulting in a loss in earnings of $6,700, that his automobile was smashed, that he had doctors' bills to pay, and less than $4,000 of the verdict represented his sufferings for two years and his future earnings.

Error to Genesee; Brennan (Fred W.), J. Submitted October 27, 1921. (Docket No. 57.) Decided December 21, 1921.

Case by Philip Beaubien against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Carton, Roberts & Stewart,* for appellant.

*Farley & Selby* (*Lombard & Atkinson,* of counsel), for appellee.

FELLOWS, J.   When this case was here before
(*Beaubien* v. *Railway*, 212 Mich. 81), the facts were
fully stated and need not be here repeated.   Except
as herein noted the present record is the same upon
the material issues as when the case was here before.
Another trial was had in January of the present year,
and plaintiff again had verdict and judgment; this
time in the sum of $10,941.66.   When the case was
here before we held that the question of plaintiff's con-
tributory negligence and the question of defendant's
negligence were for the jury.   Upon the second
trial the following occurred on plaintiff's cross-
examination:

"*A*. Because I saw there was a little danger there.
"*Q*. What?
"*A*. I seen a little danger.
"*Q*. You seen danger?
"*A*. Yes, sir.
"*Q*. You saw danger when you turned and went
across the track, didn't you?
"*A*. When I struck the south track.
"*Q*. When you turned to go across the track you saw
danger, didn't you?
"*A*. I didn't say so.
"*Q*. You did, didn't you?   You said you saw
danger?
"*A*. When I started up—before I started up to the
north track.
"*Q*. Why did you start up then, if you saw danger?
"*A*. (No answer.)
"*Q*. You started up, went around to go back east?
"*A*. I said I saw danger before I started up."

Counsel argue that this establishes contributory
negligence as matter of law.   As we understand coun-
sel, it is their claim that this testimony so changes
the record as to make this question one open to them
on this record.   Assuming that this is a sufficient
change in the record to reopen the question we are

not persuaded that the present record establishes contributory negligence as matter of law. The argument of counsel that this testimony is tantamount to an admission of plaintiff that he saw the car which struck him coming back from the "Y" is not, we think, an irresistible inference, nor, in view of what plaintiff testified to on redirect-examination, a reasonable inference. It will be noted by a reference to the statement of facts in the former opinion (page 83) that waiting cars filled the west-bound track. On redirect-examination plaintiff testified (objections are omitted) :

"*Q.* Only a few questions I want to ask I neglected to the other day. I supposed you were going to be back. In reply to a question by Mr. Roberts, while you were standing there at Durand street, and before you started up you said you saw the danger?

"*A.* I saw the—

"*Q.* Wait a minute, until I get through. What did you mean by that?   *   *   *

"*A.* I saw this track, the north track filled with cars, and that double header backing on the Y.

"*Q.* Did those cars, standing on this north track, obstruct your view to the west?

"*A.* Yes.

"*Q.* Was that one of the things you had in mind when you said you saw danger?   *   *   *

"*A.* Yes, sir.

"*Q.* That your view was obstructed?

"*A.* My view was obstructed, yes.

"*Q.* Then, with that fact in mind, with your view being obstructed, what did you do before starting up?

"*A.* I—before starting up—

"*Q.* Wait a minute. To ascertain whether it was safe to go through?   *   *   *

"*A.* I had my right door open and the top windshield, and I looked down west and saw the double header backing on the Y and I thought I was all right to turn.

"*Q.* Did you listen?

"*A.* I listened and looked."

There was more testimony on this subject both on direct and cross-examination but these excerpts show its tendency. It was proper to permit plaintiff on re-examination to explain what he meant by his statements on cross-examination and the credibility of such testimony was for the jury. *Terrill* v. *Traction Co.*, 214 Mich. 478, 483. We are not persuaded that the cross-examination of this witness, standing alone, supports only the inference defendant's counsel seek to draw from it. When taken in connection with the re-examination it clearly made the question of plaintiff's contributory negligence one for the jury. This court has on numerous occasions axiomatically remarked that a railroad crossing is a place of danger. Knowledge or notice of it is knowledge or notice of danger. Every traveler about to cross the tracks of a railroad when the view is obstructed knows there is possible danger ahead. To hold travelers guilty of contributory negligence *per se* because they know there is possible danger ahead would be the adoption of a rule not heretofore recognized and not in consonance with our former holdings. The rule does not require that the traveler must abstain from crossing railroad or street car tracks at all at the peril of being held to be guilty of contributory negligence, but that with such knowledge and notice he must use due care. While cases are frequently presented to this court where the question of contributory negligence becomes one of law, such is not the case now before us. Manifestly, if this plaintiff recklessly drove on the track knowing that there was a car within 40 feet coming at the rate of 25 miles an hour and took his chance of getting across, another question would be presented. But this record does not disclose such a case. Nor do we think such an inference can be drawn from the established facts. Here the question was for the jury. We so held when the case was here before, and the

record now before us does not show such a different state of facts as to justify a different holding.

The testimony given by plaintiff on cross-examination to which we have adverted is made the basis of two assignments of error on the charge, and it is insisted that, in view of this testimony, the instructions are erroneous.   They are as follows:

"If you find from the evidence that at the time the plaintiff attempted to cross the defendant's tracks and turn back, to the east, the said defendant had so placed its cars that it left the crossing leading into Durand street open so that there was sufficient room for rigs and automobiles, particularly the plaintiff's, to pass through, the plaintiff had a right to assume that they were so placed so as not to blockade the crossing and to allow persons operating motor vehicles, particularly this plaintiff, to pass through without waiting for the cars to move on.   And if you find that the plaintiff, in attempting to make the crossing, exercised reasonable care and caution to ascertain whether there was any car approaching from the west on the south track, he would not be guilty of contributory negligence in attempting to cross in the manner in which he did.
*    *    *

"I further charge you, gentlemen of the jury, that it was not only the duty of the defendant to sound the gong and limit the speed of the car at the time in question to 12 miles per hour as it approached the crossing, but the plaintiff had a right to rely upon this being done, and if you find that the gong was not sounded until too late to warn the plaintiff before he reached a place of danger, he would not be guilty of contributory negligence in attempting to cross in the manner, and at the place he did providing he used ordinary and reasonable care in doing so."

We shall not take time or space to consider whether these instructions are invulnerable as against any attack that might be made against them.   Defendant only insists they are erroneous because plaintiff by his cross-examination admitted he saw danger before he started up.   It will suffice to say that what we have.

already said as to the cross-examination and redirect-examination of plaintiff demonstrates that these instructions are not erroneous for the reasons here urged.

Plaintiff counted upon and offered in evidence an ordinance of the city of Flint regulating the speed of street cars.    Defendant insists this ordinance is invalid because it limits the rate of speed of single-truck cars to 12 miles an hour, while permitting double-truck cars to run 15 miles an hour.    This ordinance is a regulatory one passed in the exercise of the police power.    When such power is being exercised proper classification is permitted.    We do not perceive that the city exceeded its power to classify when it required cars having a single truck to limit their speed to 12 miles an hour, and permitted those equipped with double trucks to run faster.    We think the classification was within the discretion of the legislative branch of the city government and that the ordinance was a reasonable exercise of the police power of the city.

Defendant made a motion for a new trial, one of the grounds being that the verdict was a compromise one, the result of an agreement among the jurors to set down the amount each thought plaintiff should recover and divide the sum by the number of jurors.    Defendant accompanied the motion with the affidavit of its physician that one of the jurors had so stated to him. On the hearing of the motion defendant's counsel asked to be permitted to call "witnesses" to testify on this subject.    The court intimated that the jurors would not be permitted to give testimony impeaching their verdict, and no other "witnesses" were suggested by defendant as having knowledge of what occurred in the jury room.    The question, therefore, which is presented is whether the jurors may be called in open court and permitted to give evidence impeaching their verdict.    The affidavit of the physician was hearsay

and not competent evidence of what took place in the jury room. *Stevenson* v. *Railway Co.*, 118 Mich. 651. This court has frequently held that a juror may not by affidavit impeach the verdict. *Pierce* v. *Pierce,* 38 Mich. 412; *People* v. *Stimer,* 82 Mich. 17; *In re Merriman's Appeal,* 108 Mich. 454; *City of Battle Creek* v. *Haak,* 139 Mich. 514. And in *Hewett* v. *Chapman,* 49 Mich. 4, it was expressly held (we quote the syllabus) :

"Jurors are competent witnesses to prove what testimony has been given upon a trial in which they have served. But they cannot be examined as to the elements of their verdict nor as to the deliberations by which it was reached; the verdict itself is the best evidence of the result of their deliberations."

After the verdict is rendered and the jury discharged, the rule is no different between an affidavit of a juror impeaching the verdict because of what took place in the jury room, and his oral testimony given in open court. Both are inhibited on the ground of public policy.

The other grounds of the motion for a new trial are that the verdict is against the weight of the evidence and is excessive. A large number of doctors were called as witnesses. Their testimony is somewhat in conflict. Reconciling it so far as possible, we think it may be said that it tends most strongly to show plaintiff to be suffering from neurosis although there is medical testimony of a permanent injury to the spine. Defendant's counsel insist that such an affliction as neurosis, or as traumatic neurosis, is a myth. They cite at some length medical authority to sustain their view. But the physicians called by both parties may be fairly said to agree, we think, that such affliction is a recognized condition by the medical fraternity, and that one so afflicted suffers as real pain as one with an actual organic lesion. While the physicians called by defendant attempt to minimize and eliminate

the injury to the spine, the physician who has attended him for two years testifies unequivocally:

"I have examined him within the last ten days. There were permanent results from the bruise to Mr. Beaubien, to the spinal column or vertebræ in the spine."

In view of the claim of defendant's counsel, we shall set out some brief excerpts from some of the medical testimony. Dr. Marshall, called by defendant, testified:

"A person suffering from traumatic neurosis, the suffering is just as real as if it was organic in a true case. He suffers these things mentally. In a case like this man who has been at work steadily and been well receiving these injuries, he wonders about whether he is going to get well, worries about supporting his family and those things and comes to experience those pains which he had at the beginning and they stay with him until the original cause for it has been eliminated. * * * As the term 'traumatic neurosis' is used, it implies that the neurosis is the result of the trauma and where that is the disease. That is a recognized condition.

"I received Beaubien's whole history from himself and from other sources as he tells them and, assuming that they were all true, I would attribute his condition to the injuries he received at the time and these symptoms, in the absence of any substantial organic difficulties, are characteristic of traumatic neurosis."

Dr. O'Neil, defendant's surgeon at Flint, testified:

"I have seen a great number of alleged traumatic neurosis. I never saw a real one. I don't claim there is not any such thing. The medical profession recognize traumatic neurosis."

Dr. Lyman, called by plaintiff, testified:

"From what I have learned of this man's accident and what I discovered through my examination, he is suffering a traumatic neurosis, that is a functional disturbance of the nervous system by actual physical

violence, blows, the pain perhaps increasing by the anxiety and subsequent worry. That is a condition recognized by physicians and surgeons, an acute existing condition, a disease entity."

While Dr. Manwarring, also called by plaintiff, said:

"In the last examination he showed very marked anxiety neurosis. Neurosis is a condition in which he shows a great deal of anxiety concerning his condition to such an extent that through worry and thought he has lost confidence in his ability to do things. He is limited in his activities by his lack of confidence in himself, in his physical condition. In this examination he complained of various pains. * * * Anxiety neurosis named by me is similar to a neurasthenic condition. Nervous exhaustion would be a common name for this condition. The conditions named, the common name for which is nervous exhaustion, are frequently the result of a shock like Mr. Beaubien received when taken with the injury plus the mental attitude toward it. It is always that combination that produces the condition."

In view of the medical testimony some of which we have quoted, the extent and permanency of plaintiff's injury was for the jury, and the verdict does not, we think, give any evidence that it was the result of prejudice or passion. The verdict in the second trial was rendered January 25, 1921, practically two years from the date of the accident. Plaintiff, if his testimony is to be believed, and the jury believed it, and it is not contradicted in any substantial way, had not been able to work at all at his business. Before his injury it is undisputed he was earning $65 a week. He would, therefore, have lost in earnings from the date of the injury to the date of the second verdict over $6,700. His automobile was smashed and he had doctor bills for two years to pay. So it will be seen that about two-thirds of the verdict was for pecuniary loss suffered up to that time—less than $4,000 of the verdict represented his sufferings for two years and

his future earnings.  We are not persuaded that it was excessive.  The trial judge presided at both trials. He heard the testimony and saw the plaintiff on both occasions.  He was not persuaded that the verdict was excessive or against the weight of the evidence.  A careful reading of this somewhat voluminous record leads us to the same conclusion.

The judgment will be affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.