PEOPLE *v*. PIZZINO.

1. CRIMINAL LAW—JURY'S REQUEST FOR FURTHER INSTRUCTIONS—
JUDGE'S STATEMENTS—INSTRUCTIONS.
   Statements of the trial judge made to the jury when they re-
   quested further instructions and when they asked to view the
   scene of the crime must be considered in connection with the
   entire context of his instructions to the jury.

2. SAME—MISCARRIAGE OF JUSTICE.
   The Supreme Court will not reverse a conviction of crime unless
   satisfied that there was such error committed on the trial as
   deprived the defendant of substantial rights or resulted in a
   miscarriage of justice (3 Comp. Laws 1929, § 17354).

3. SAME—COERCION OF JURY.
   When it is claimed that a jury has been coerced into returning
   a verdict, all of the facts and circumstances must be considered
   as well as the particular language used by the trial judge.

4. SAME—PROLONGED DELIBERATIONS OF JURY—POWERS OF COURT.
   While it is proper for the court, after a jury has been deliberat-
   ing for some time, to recall them to ascertain why they can-
   not agree and inquire whether or not there is any likelihood
   of an agreement, nothing may be said to coerce an agreement,
   indicate what verdict should be rendered or appeal to jury to
   decide the case in some way even at the expense of honest
   convictions; although the court may give further instructions
   or advice calculated to assist them in coming to an agreement,
   call attention to time taken in the trial and great expense
   incurred therein or which would be incurred by a retrial, im-
   press upon them the importance of the case and urge them
   strongly to come to some agreement, ask if any one has in-
   truded upon their deliberations or attempted to tamper with
   them, and direct them to retire for further consideration.

5. SAME—JURY'S REQUEST FOR FURTHER INSTRUCTIONS—VIEW OF
SCENE OF CRIME.
   Statements made by trial judge when jury requested further
   instructions and when they sought a view of the scene of the

crime when examined in connection with other instructions given *held,* not to have operated to coerce the jury in arriving at a verdict.

6. SAME—IMPEACHMENT OF VERDICT—AFFIDAVITS.

Jurors may not impeach their verdict by affidavits, since to permit such action would open door for tampering with jury subsequent to the return of their verdict.

7. SAME—INCAPACITY OF JURORS FROM HEAT AND EXTENDED DELIBERATIONS—AFFIDAVITS.

Where jury was sworn in on June 12th, began its deliberations on June 24th, and concluded on June 27th, affidavits of certain jurors that they were incapacitated by the heat and their extended deliberations *held,* not impressive in view of the fact that the jurors were able to enter the court room and be polled.

8. SAME—POLLING JURY—RECORD.

Where reporter stated he could not hear the response of a certain juror when juror was being polled and court stated that juror had said ''Yes,'' record showed verdict of guilty was unanimous verdict of the jury.

9. VERDICTS AND FINDINGS—POLLING JURY.

The act of assent to a verdict is constituted by the express answer to the clerk at the polling in open court, or by the silence which implies an assent.

10. SAME—VERDICT DIFFERENT FROM INFORMAL AGREEMENT IN JURY-ROOM.

The fact that the verdict as delivered was by one or more individual jurors not assented to by them in the jury-room, or is different from the one there informally assented to by them, is no ground for later correcting or setting aside the verdict.

11. CRIMINAL LAW—VIEW OF SCENE OF CRIME—DISCRETION OF COURT.

Permitting jury to view scene of alleged crime of murder was discretionary with the trial judge and under circumstances shown was not an abuse of discretion in prosecution resulting in conviction of murder in the second degree (3 Comp. Laws 1929, § 17321).

12. SAME—NEW TRIAL—MISCONDUCT OF OFFICER AND MATRON IN CHARGE OF JURY—SEPARATION OF JURY.

Denial of a new trial because of misconduct of officer and matron in charge of jury in permitting jury to separate after they were sworn in but before testimony was taken, enter a place where there were other persons present and where beer

was served was not reversible error where it is not shown that the jurors were contacted by any persons interested in the results of the trial or that anything occurred which might have influenced their verdict.

13. SAME—NEW TRIAL—MISCONDUCT OF OFFICER IN CHARGE OF JURY —PREJUDICE.

Highly improper remark of deputy sheriff in charge of jury in prosecution for murder that if he were on the jury it would take him only five minutes to convict the defendants, which was loud enough to be heard by four of the jurors, did not constitute sufficient ground for granting a new trial in the absence of a showing that it influenced any member of the jury who heard it or that defendant was prejudiced thereby.

14. SAME—MISCONDUCT IN JURY ROOM—AFFIDAVITS.

Jurors may not impeach their verdict by subsequent affidavits showing misconduct in the jury room.

15. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—CONTINUANCE.

A new trial will not be granted because of newly-discovered evidence where the witness who was to give it was known to the accused although he could not be found at the time of the trial, in the absence of request for continuance or postponement.

16. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

In order to obtain a new trial upon the ground of newly-discovered evidence it should be shown that the evidence, and not merely its materiality, be newly discovered; that the evidence be not cumulative merely; that it be such as to render a different result probable on a retrial of the cause and that the party could not with reasonable diligence have discovered and produced it at the trial.

17. SAME—NEWLY-DISCOVERED EVIDENCE—DISCRETION OF COURT.

A motion for a new trial on the ground of newly-discovered evidence is not regarded with favor and the granting thereof is discretionary with the trial court.

18. CRIMINAL LAW—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE— CUMULATIVE TESTIMONY—CONTINUANCE.

In prosecution for murder, the trial court's denial of new trial based on newly-discovered evidence of codefendant who had not been apprehended at time of defendant's trial, which evidence was merely cumulative as to whether defendant had

been a party to the crime, was not error, where defendant did not request an adjournment until testimony of defendant could be obtained.

19. SAME—MISCARRIAGE OF JUSTICE.
Examination of record in prosecution resulting in conviction of appellant of murder in the second degree *held*, not to disclose that errors complained of resulted in a miscarriage of justice (3 Comp. Laws 1929, § 17354).

Appeal from. Recorder's Court of the City of Detroit; Sweeny (Henry S.), and Brennan (John V.), JJ. Submitted October 11, 1945. (Docket No. 71, Calendar No. 41,579.) Decided December 3, 1945.

Theodore Pizzino was convicted of murder in the second degree. Affirmed.

*John W. Coury,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Michael A. Guest,* Assistant Prosecuting Attorney, for the people.

STARR, C. J. In April, 1931, Leo Cellura, Angelo. Livecchi, and defendant Theodore Pizzino were indicted by a grand jury for the murder of one William Cannon on July 3, 1930. Livecchi and defendant Pizzino were arrested and on jury trial in June, 1931, were convicted of second-degree murder. Their motion for a new trial was denied, and they were sentenced to life imprisonment. Cellura was not apprehended until 1936, and he was thereafter tried, convicted of first-degree murder, and sentenced to life imprisonment. On appeal his conviction was affirmed. *People* v. *Cellura,* 288 Mich. 54.
. In 1940, having obtained leave, defendant Pizzino filed motion for a new trial based upon alleged errors

in his trial and upon a claim of newly-discovered evidence. This motion was denied, and, having obtained leave, he appeals. No question is raised as to the great weight of the evidence, and the only issue presented is whether or not there were irregularities in his trial which require reversal and the granting of a new trial.

Cellura, Livecchi, and defendant Pizzino were underworld characters. There was testimony indicating that they were associated together in the unlawful distribution of narcotics from rooms in the LaSalle hotel in Detroit. On July 3, 1930, at about 6:20 o'clock in the afternoon said William Cannon and two other men entered an automobile parked on Adelaide street, a few feet from the entrance to the hotel. A man identified as Cellura approached and fired several shots into the car, killing Cannon and the man in the front seat beside him and wounding one Stitzel, who was in the back seat. Although it was disputed, there was testimony that defendant Pizzino was with Cellura at the time of the shooting. As no question is raised as to the great weight of the evidence, it would serve no purpose to discuss the testimony in detail. Suffice it to say that the record indicates that the murder resulted from a feud between gangsters engaged in nefarious and unlawful activities. It should be noted that defendant Pizzino did not take the stand in his own defense.

On this appeal defendant first contends that the trial judge coerced the jury into arriving at a verdict. It appears that during the course of their deliberations the jury requested further instructions, and on these occasions the judge stated in part as follows:

"I just want to impress on your minds this matter has taken almost two weeks and it is an important case. Naturally we can't afford to litigate the question forever, on account of the city  *  *  *  cannot

afford to have it done that way. It takes time to try these cases and I want you, if possible, to reconcile and agree and arrive at some conclusion and settle the facts in the case at least. * * *

"I want to emphasize the fact that while you have been out deliberating, of course, for some time, yet, as long as you feel you are able to arrive at a verdict, why, the court feels that you should be permitted to deliberate because in a case of this importance it has taken considerable time and you should not be stubborn—*you should simply base your conclusions upon the evidence in the case and the law that I have given to you.*"

On another occasion the jury asked to view the scene of the crime, and in granting them permission the trial judge said in part:

"I think for the purpose of aiding the jury in having a better visualization * * * of the testimony that has been introduced, I will exercise the discretion in that respect and permit a view of the premises to be taken. * * * I don't want to unduly retain you. You have not been deliberating long when you figure it all out. You have been out, of course, a matter of entering, as it were, the third day, but when you reduce the hours of deliberation from the actual hours you have been together, it only amounts to 16 or 20 at the most, because you have had your sleep and meals and other hours away from deliberations, so that I don't feel that you have been burdened in any way at all, especially in view of the facts of the case that has taken so long to try as this case has taken. And, of course, you have all sworn to bring in a verdict according to the evidence. It is not your personal opinion that amounts to anything, excepting as that is based upon the evidence, having in mind the doctrine of the presumption of innocence and the doctrine of reasonable doubt as I have charged it to you. So arrangements will be made for a view of the premises."

The above-quoted statements by the trial judge must be considered in connection with the entire context of his instructions to the jury. *People* v. *Serra,* 301 Mich. 124. It should be noted that in the statements complained of he expressly stated to the jury, "You should not be stubborn—you should simply base your conclusions upon the evidence in the case and the law that I have given to you." In the case of *People* v. *Kasem,* 230 Mich. 278, 290, we said:

"We have no right to reverse a conviction unless we are satisfied that there was such error committed on the trial as deprived the defendant of substantial rights or resulted in a miscarriage of justice."

In *Zeitz* v. *Mara,* 290 Mich. 161, 166, we said:

"Examination of the authorities shows that, when it is claimed that a jury has been coerced into returning a verdict, all of the facts and circumstances must be considered as well as the particular language used by the trial judge."

In *People* v. *Kasem, supra* (pp. 290, 291), we quoted with approval the following statement from 16 C. J. p. 1091:

"It is proper for the court, after the jury have been deliberating for some time, to recall them to ascertain why they cannot agree, and to inquire as to whether there is any likelihood of an agreement. Provided nothing is said to coerce an agreement, or to indicate what verdict should be rendered, or that may be considered as an appeal to the jury to decide the case in some way even at the expense of honest convictions, the court may give the jury further instructions or advice calculated to assist them in coming to an agreement; may call their attention to the time taken in the trial and the great expense incurred therein, or which would be incurred by a retrial; may impress

upon them the importance of the case and urge them strongly to come to some agreement; may ask them if any one has intruded upon their deliberations or has attempted to tamper with them; and may direct them to retire for further consideration.''

See, also, *Decker* v. *Schumacher,* 312 Mich. 6; *Gordon* v. *Samson,* 294 Mich. 294.

We have examined the above-quoted statements in connection with other instructions given, and are convinced that under the facts and circumstances shown, they did not operate to coerce the jury in arriving at a verdict.

Defendant next contends that the verdict of guilty was not the unanimous verdict of the jury. It appears that they began their deliberations on June 24th and returned their verdict on June 27th. The record indicates that during this time the weather was extremely hot. On the second evening one juror was affected by the heat, and it was necessary for the matron to administer spirits of ammonia to revive her. One juror made affidavit that he voted for a verdict of guilty because he was physically exhausted. Another juror made affidavit that she was under the influence of ''threats made and the heat,'' and that at the time the jury were polled she did not give a free and voluntary answer to the question as to whether or not she voted for a verdict of guilty. In support of defendant's motion for a new trial another juror made affidavit that when the verdict of guilty was returned, she was ''in a very bad physical condition on account of the long and tedious hours of deliberation and due to the heat;'' that she was incapacitated from performing her duty as a juror; that she had no recollection of what took place; and that when she was polled by the clerk, she had no intention of voting guilty. When the jury were polled, the following occurred as to this juror:

"*The clerk:* Catherine Wiles, is that your verdict?
"*Juror Wiles:* (No audible response).
"*The reporter:* I can't hear you.
"*The Court:* She said, 'Yes.'"

The rule is well established that jurors may not impeach their verdict by affidavits. To permit this would open the door for tampering with the jury subsequent to the return of their verdict. Affidavits of like purport might be made by jurors in many cases where their deliberations are long, argumentative, and tiring. In the present case the jurors were able to enter the court room and be polled. We are not impressed by the affidavits of certain jurors that they were incapacitated by the heat and their extended deliberations. As stated above, the trial judge heard juror Wiles answer, "Yes." The reporter may not have heard her answer, but the judge apparently did. In 8 Wigmore on Evidence (3d Ed.), p. 704, § 2355, it is stated:

"The act of assent to a verdict is constituted by the express answer to the clerk at the polling in open court, or by the silence which implies an assent. This outward act is final. * * *

"Hence, the fact that the verdict as delivered was by one or more individual jurors not assented to by them in the jury-room, or is different from the one there informally assented to by them, is no ground for later correcting or setting aside the verdict."

In the case of *In re Merriman's Appeal,* 108 Mich. 454, 462, it is stated:

"The circuit judge held that the affidavits of the jurors were not admissible to impeach their verdict, and this ruling involves the most important question covered by the motion for a new trial, and a question by no means free from difficulty. It is the universal rule that the affidavits of jurors are not admissible

to impeach their verdict by showing misconduct in the jury room. * * * The great weight of authority, however, as well as the reason for the rule, supports the contention that, at least as to the question of whether any influence is exerted by one of the jurors unduly upon his fellows, or whether his conduct indicates bias, public policy forbids the proof of such claim by the affidavits of fellow jurors. The reasons for the exclusion of such affidavits are stated to be because it would make it possible for a juror, by his own oath, to impeach his solemn act by affidavits, and would open the door for the defeated party to tamper with the jury. * * * The cases upon this point are numerous, and the text writers in general agree upon the rule which excludes such affidavits."

See, also, *People* v. *Tutha,* 276 Mich. 387; *People* v. *Sanford,* 252 Mich. 240; *People* v. *Steeneck,* 247 Mich. 583; *Ballance* v. *Dunnington,* 246 Mich. 36; *People* v. *Swift,* 172 Mich. 473; *People* v. *Stewart,* 163 Mich. 1.

In the present case, under the facts and circumstances shown by the record, we conclude that the verdict of guilty was the unanimous verdict of the jury.

Defendant next contends that it was prejudicial error for the trial judge to permit the jury to view the scene of the alleged crime after they began their deliberations. We cannot agree with this contention. The granting of this permission was discretionary with the trial judge, and under the circumstances shown there was no abuse of discretion. In *People* v. *Auerbach,* 176 Mich. 23, 46 (Ann. Cas. 1915 B, 557), we said:

"Section 11952, 3 Comp. Laws [1897]*, provides that the court may order a view by any jury im-

---

* See 3 Comp. Laws 1929, § 17321 (Stat. Ann. § 28.1051).—RE-
PORTER.

paneled to try a criminal case whenever such court shall deem such view necessary. The matter of the view of the place where an alleged crime has been committed seems to be discretionary with the court."

See, also, *People* v. *Connor*, 295 Mich. 1; *People* v. *Winney*, 196 Mich. 347.

Defendant further contends that the trial court erred in denying his motion for a new trial based on the alleged misconduct of the officer and matron in charge of the jury. It appears that the jury were sworn on June 12th and were ordered confined for the duration of the trial. In the evening of that day the jurors, who were in the charge of a police officer and a matron, were taken by bus to their respective homes to obtain clothing and other articles which they would need during their confinement. It appears that the bus was stopped at the home of a friend of the driver and that all but two of the jurors went in and stayed for about half an hour and, while there, drank beer. This conduct of the officer and matron in permitting the jury to separate and enter a place where there were other people present was highly improper. However, this event occurred prior to the taking of any testimony, and there was no showing that the jurors contacted any persons interested in the results of the trial or that anything occurred which might have influenced their verdict. Had this occurred during the actual progress of the trial or during the jury's deliberations, a more serious question would have been presented. Under the facts and circumstances shown, the trial court did not err in denying defendant's motion for a new trial because of this occurrence. *In re Merriman's Appeal, supra.*

In an affidavit filed in support of defendant's motion for a new trial, one juror stated that during the deliberations the deputy sheriff in charge of the jury

said, in a voice loud enough to be heard by four of the jurors, that "if he were on the jury it would only take him five minutes to convict the defendants." Defendant Pizzino claims that this remark by the officer constituted reversible error, but there is no claim or showing that it influenced any member of the jury who heard it. The remark was highly improper, but in the absence of a showing that defendant was prejudiced thereby, it did not constitute sufficient ground for granting a new trial. The rule is well established that jurors may not impeach their verdict by subsequent affidavits showing misconduct in the jury room. *People* v. *Tomczak,* 250 Mich. 679; *In re Merriman's Appeal, supra.* In 90 A. L. R. 254, it is stated:

"The reasons for the view that affidavits, depositions, or testimony of jurors may not be received in evidence to show the misconduct, improper acts, or communications of third persons are adequately stated in *Chicago Sanitary Dist.* v. *Cullerton* (1893) 147 Ill. 385 (35 N. E. 723), where it is held that the affidavits of jurors showing or tending to show improper conduct on the part of the officer in charge, or of the jurors or others, cannot be received for the purpose of impeaching the verdict. The court says: 'The grounds stated for the rejection of such affidavits have usually been, first, because they would tend to defeat the solemn act of the juror under oath; second, because their admission would open the door to tamper with the jurymen after their discharge; third, it would furnish to dissatisfied and corrupt jurors the means of destroying the verdict to which they had assented.' See, also, to the same effect *Taylor* v. *Garnett* (1887), 110 Ind. 287 (11 N. E. 309).''

The trial court did not err in denying defendant's motion for a new trial based on the above-quoted remark by the officer in charge of the jury.

Defendant also contends that the trial court erred in denying his motion for a new trial based upon newly-discovered evidence. As hereinbefore stated, Leo Cellura was indicted with Livecchi and defendant Pizzino. Cellura was not apprehended until 1936 and was thereafter tried and convicted of first-degree murder. Subsequent to his conviction, and in support of defendant Pizzino's delayed motion for a new trial, Cellura stated by affidavit that Pizzino was not present when the shooting occurred and had nothing directly or indirectly to do with the crime. Although Pizzino may not have participated in the actual shooting, there was testimony that he was with Cellura when the murder was committed and that he was a party to a plan for the commission of the crime. If Cellura were to testify upon a new trial, his testimony would merely be cumulative, and the question of fact would remain as to whether or not defendant Pizzino participated in the planning or commission of the crime. It should be noted that at the time of trial this defendant made no request for an adjournment until the testimony of Cellura could be obtained. In *People* v. *Purman,* 216 Mich. 430, 438, 439, we said:

"A new trial will not be granted because of newly-discovered evidence where the witness who was to give it was known to the accused, although he could not be found at the time of the trial, where no continuance or postponement was requested. 16 C. J. p. 1193. * * *

"The rule as to the proper practice is well stated in *Canfield* v. *City of Jackson,* 112 Mich. 120. * * * We said in that case:

" ' "A motion for a new trial upon the ground of newly-discovered evidence is not regarded with favor. The policy of the law is to require of parties, care, diligence and vigilance in securing and presenting evidence." Elliott, Appellate Procedure, § 857.

To entitle one to a new trial upon this ground it should be shown: First, that the evidence, and not merely its materiality, be newly discovered; second, that the evidence be not cumulative merely; third, that it be such as to render a different result probable on a retrial of the cause; fourth, that the party could not with reasonable diligence have discovered and produced it at the trial. Hayne, New Trial & Appeal, §§ 88–92, and many cases there cited; *Gray* v. *Barton,* 62 Mich. 186.' "

The granting of a new trial on the ground of newly-discovered evidence was discretionary with the trial court. *People* v. *Serra, supra; People* v. *Mullane,* 256 Mich. 54; *People* v. *Tucker,* 222 Mich. 564. Under the facts and circumstances shown the trial court did not err in denying defendant's motion for a new trial based upon the allegedly newly-discovered evidence.

We have carefully examined the record and are convinced that the errors complained of did not result in a miscarriage of justice. 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096). The trial court did not err in denying defendant's motions for a new trial. Defendant's conviction is affirmed.

NORTH, CARR, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.