PEOPLE *v.* RUSHIN

PEOPLE *v.* CARTER

1. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—
POLICY.

The double jeopardy clauses in the Federal and State Con-
stitutions clearly enunciate a policy of finality in criminal
proceedings in favor of the defendant (US Const, Am V;
Const 1963, art 1, § 15).

2. CRIMINAL LAW—JURY—VERDICT—ASSENT—FINALITY.

The act of assent to a verdict is constituted by the express
answer to the clerk at the polling in open court, or by the
silence which implies an assent, and this outward act is final.

3. CRIMINAL LAW—JURY—DISCHARGE—RECALL—AMENDMENT OF
VERDICT.

Recall of the jury in order to alter, amend, or impeach a verdict
in a criminal case once the jury has been officially discharged
and has left the courtroom is error.

4. CRIMINAL LAW—JURY—DISCHARGE—RECALL—AMENDMENT OF
VERDICT.

As soon as the jury departs from the courtroom, its legal
duties cease to exist, its relationship to the case has terminated,
and it no longer functions as a unit charged to perform a
solemn task but rather as 12 unsworn members of the com-
munity; to hold otherwise would not only offend the double
jeopardy clauses of the Federal and State Constitutions but
also would serve as an invitation to tamper with the jury

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 165 *et seq.*
[2] 53 Am Jur, Trial § 1020 *et seq.*
[3, 4, 6] 53 Am Jur, Trial § 1100.
[5] 53 Am Jur, Trial § 1015 *et seq.*

after it had completed its deliberations (US Const, Am V; Const 1963, art 1, § 15).

5. CRIMINAL LAW—JURY—VERDICT—POLL.

The right of the parties to poll the jury is lost if not timely exercised; the demand to poll the jury should be made after the verdict is announced but before the jury is discharged and leaves the courtroom.

6. CRIMINAL LAW—JURY—VERDICT—ACQUITTAL—FINALITY.

A verdict of acquittal in a trial for armed robbery was final where the trial judge, after receiving the verdict, discharged the jurors, who left the courtroom; it was error when the judge then recalled them after the court reporter had informed him that one of the jurors had indicated disagreement with the announced verdict, had the jury polled, ordered them to continue their deliberations, and declared a mistrial after the jury could not agree after further deliberation.

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 November 9, 1971, at Detroit. (Docket Nos. 11417, 11604.) Decided December 7, 1971.

Clarence Rushin and Herman D. Carter, Jr., were convicted of armed robbery. Defendants appeal. Reversed and defendants discharged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Frederick B. Bellamy,* for defendant Rushin on appeal.

*Gerald M. Lorence,* for defendant Carter on appeal.

Before: Lesinski, C. J., and Holbrook and Van
Valkenburg,* JJ.

Lesinski, C. J. Defendants Clarence Rushin and
Herman D. Carter, Jr., were convicted by a jury
of armed robbery, MCLA 750.529; MSA 28.797.
Both defendants appeal as of right.

Defendants were first tried on this charge in a
proceeding commencing on December 30, 1970. The
jury began deliberations on January 5, 1971, and,
after deliberating 1 hour and 53 minutes, reached
a verdict. The following transpired as the court
received the jury's verdict:

"*The Court:* * * * Members of the jury, have
you agreed upon a verdict and if so, who shall
speak for you?
"*Juror # 11:* We have your Honor.
"*The Court:* Have you agreed upon a verdict?
"*Juror # 11:* Yes we have.
"*The Court:* Mr. Foreman, what is your verdict
as to Clarence Rushin?
"*Juror # 11:* Not guilty.
"*The Court:* What is your verdict as to Mr.
Carter?
"*Juror # 11:* Not guilty.
"*The Court:* Members of the jury please rise.
You say upon your oath that you find each of the
defendants not guilty, so say you Mr. Foreman, so
say you all?
        (*The jury is nodding yes—not # 8.*)
"*The Court:* Members of the jury, you are dis-
charged from further consideration in this case.
You can return to the jury assembly room. You
are discharged from further consideration in this
case."

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The jury left the courtroom at 12:22 p.m. At 12:24 p.m. the trial court called the jury back into the courtroom. The trial judge told the jury that the court reporter had informed him that one of the jurors was indicating the verdict was not his when so asked. Juror # 8 then indicated the verdict was not unanimous. At this point the prosecutor moved that the jury be polled, and Juror # 8 indicated his disagreement with the "not guilty" verdict. The trial court then ordered the jury to continue its deliberations. When the jury still could not agree after further deliberations, the trial judge declared a mistrial.

Before being brought to trial a second time, defendants filed a motion to dismiss the information on double jeopardy grounds, which motion the trial court denied. Defendants were then convicted of armed robbery at the second proceeding.

On appeal, defendants argue that the jury at the first trial returned a valid verdict of acquittal and thereafter were discharged. To have retried them in light of that verdict, defendants urge, was a violation of the double jeopardy clause of the US Const, Am V, and Mich Const 1963, art 1, § 15.

Whether a jury may be recalled, in a criminal case, after it has been discharged and left the courtroom, in order to amend or alter its verdict, is a case of first impression in the State of Michigan, notwithstanding the people's contention that this case is controlled by the holding of *Routhier* v. *Detroit*, 338 Mich 449 (1953), a civil case. In *Routhier*, a jury had returned a judgment of $5,000 for the plaintiff in an automobile negligence suit. The following day the judge called the jury back, and the polling of the jury on its recall revealed that one juror had not agreed to the verdict. The trial court then declared a mistrial. The Michigan Su-

preme Court approved the procedure adopted by the trial judge on appeal.

*Routhier* does not, in our opinion, apply to a criminal proceeding, however. Both the dictates of the double jeopardy clause and the differing nature of the criminal process mandate this conclusion. The double jeopardy clause clearly enunciates a policy of finality in criminal proceedings in favor of the defendant. *United States* v. *Jorn,* 400 US 470, 479; 91 S Ct 547, 554; 27 L Ed 2d 543, 553 (1971). Although public policy might weigh heavily in favor of a similar policy in civil causes, there is no constitutional provision which likewise requires such a result.

We also note the quotation from 8 Wigmore on Evidence (3d ed), § 2355, p 704, cited in *People* v. *Pizzino,* 313 Mich 97, 105 (1945):

"The act of assent to a verdict is constituted by the express answer to the clerk at the polling in open court, or by the silence which implies an assent. This outward act is final. \* \* \*

"Hence, the fact that the verdict as delivered was by one or more individual jurors not assented to by them in the jury-room, or is different from the one there informally assented to by them, is no ground for later correcting or setting aside the verdict."

In *Pizzino,* defendant contended on appeal that the verdict of guilty was not unanimous. Three jurors submitted affidavits indicating they thought defendant was not guilty and one of these stated "that when she was polled by the clerk, she had no intention of voting guilty." 313 Mich 104. In rejecting defendant's contention, the Supreme Court pointed out that to allow jurors to impeach their verdict with affidavits "would open the door for tampering with the jury subsequent to the return of their ver-

dict." 313 Mich 105. These statements from *Pizzino* are indicative of a recognition that courts are faced with a far different problem when this problem is raised in a criminal proceeding rather than a civil one.

In other jurisdictions which have faced this problem, several guidelines for determining when a jury has been finally discharged have been espoused. One view, fostered in Pennsylvania, holds that once the jury has been officially discharged by the judge, it cannot be recalled to amend or alter its verdict. *Commonwealth* v. *Cano,* 182 Pa Super 524; 128 A2d 358 (1956), *aff'd* 389 Pa 639; 133 A2d 800 (1957), *cert den* 355 US 182; 78 S Ct 267; 2 L Ed 2d 186; *Commonwealth* v. *Johnson,* 359 Pa 287; 59 A2d 128 (1948). See, also, *West* v. *State,* 228 Ind 431; 92 NE2d 852 (1950).

In *Johnson, supra,* the foreman announced that the jury had found defendant not guilty. The next morning the prosecutor informed the trial judge that several of the jurors had revealed to him that the verdict as related by the foreman was not a complete verdict. The judge recalled the jurors and ascertained that although they had absolved defendant of guilt on a first-degree murder charge, they had found him guilty of manslaughter. The court then sentenced defendant on the manslaughter charge. In reversing defendant's conviction, the court stated:

"The established rule is that the verdict as recorded is the verdict of the jury and the latter shall not be allowed to impeach or to alter or amend it after their separation or discharge." 359 Pa 291; 59 A2d 129.

The court emphasized that:

"If this practice were judicially sanctioned, a jury might acquit a defendant of a crime and then

a day, a week or a month later reassemble and declare that the verdict was a mistake, that they intended to find the defendant guilty and would then proceed to do so. To permit such a disorderly practice in the administration of justice is unthinkable. It is the antithesis of due process of law." 359 Pa 294; 59 A2d 131.

Another view holds that the jury may no longer be recalled when its members have left the courtroom. In a leading case propounding this standard, the Supreme Court of Virginia declared:

"While the jury are in the actual presence of the court and under its control, it can see, without resort to testimony, that the fountain of justice has been kept pure, and that no harm could have come to the accused. Beyond this, we are unwilling to go." *Melton* v. *Commonwealth,* 132 Va 703, 707; 111 SE 291, 293 (1922).

In *Melton,* the judge discharged the jury, and the jury retired to the jury room to be paid. The judge called them back to the courtroom to correct an error they had made in sentencing. Such was held to be error, for:

"When the court announces their discharge and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict. The sanctity of jury trials cannot be thus subjected to the hazard of suspicion." 132 Va 712; 111 SE 294.

In accord with *Melton,* see *Brister* v. *State,* 26 Ala 107 (1855); *Hayes* v. *State,* 44 Ala App 499; 214 So 2d 708 (1968); *Levells* v. *State,* 32 Ark 585 (1877); *People* v. *Lee Yune Chong,* 94 Cal 379; 29 P 776 (1892); *Harrell* v. *State,* 43 Okla Cr 278; 278 P 404

(1929); and *State* v. *Brandenberg,* 38 NJ Super 561; 120 A2d 59 (1956).

The people contend that this Court should employ the standard set forth in *Summers* v. *United States,* 11 F2d 583 (CA 4, 1926). The Fourth Circuit Court of Appeals in *Summers* did state that the important factor was not whether the trial court had officially discharged the jury but rather what was "actually done and acted upon". 11 F2d 583, 586. The court there said that a jury could remain undischarged despite an official pronouncement to that effect, "if, after such announcement, it remains an undispersed unit, within control of the court, with no opportunity to mingle with or discuss the case with others". 11 F2d 586. The jury in *Summers* had not yet left the jury box when they were recalled.

We do not believe that the *Summers* rule would lead to a different result in this case than the standard promulgated in *Melton, supra.* The court in *Summers* stated that the jury must be within control of the court. The jury in the instant case was no longer within the control of the court when it left the courtroom.

After an examination of the precedents from other jurisdictions, we are convinced that the *Melton* rule is the wisest course for the courts of this state to follow.[1] Once the jury has been officially discharged and left the courtroom, we hold that it is error to recall it in order to alter, amend or impeach a verdict in a criminal case. As soon as it departs from the courtroom, the jury's legal duties cease to exist; it no longer functions as a unit charged to perform a solemn task but rather as 12 unsworn members of

---

[1] We do not mean to intimate that a jury could not be finally discharged while it still remained in the courtroom, if it was subjected to extrajudicial influences after it had rendered a verdict and been discharged, but before leaving the physical presence of the court.

the community; its relationship to the case has terminated. The Court cannot ascertain the influence to which the jury has been subjected after it has left the courtroom, be it for two minutes or two days. Thus, the jurors are proscribed from deliberating further in the case.

To rule that a jury could be recalled after being discharged and leaving the courtroom would not only offend the policies underlying the double jeopardy clause, but would also serve as an invitation to tamper with the jury after it had completed its deliberations. Thus, the *Melton* rule does not confer benefits solely on defendants. Rather, it also acts to preserve the integrity of a guilty verdict.

As defendants point out in their brief on appeal, the trial court also committed error in allowing the prosecutor to belatedly poll the jury. Pursuant to GCR 1963, 512.2, parties "may require a poll" of the jury after the verdict is announced. The great weight of authority holds that the right to poll the jury is lost if not timely exercised. The demand to poll the jury should be made after the verdict is announced but before the jury is discharged and leaves the courtroom. *United States* v. *Neal,* 365 F2d 188 (CA 6, 1966); *United States* v. *Dye,* 61 F Supp 457 (WD Ky, 1945); *Hayes* v. *State, supra; Hammond* v. *State,* 166 Ga 213; 142 SE 895 (1928); *State* v. *Blisak,* 26 NJ Misc 197; 58 A2d 711 (1948); *State* v. *Cephus,* 241 NC 562; 86 SE2d 70 (1955); *Commonwealth* v. *Schmous,* 162 Pa 326; 29 A 644 (1894). If the trial prosecutor in this case had requested that the jury be polled before it was finally discharged, this situation would, most likely, have been avoided.

We rule that the jury's verdict of acquittal at the first trial was final. The trial court committed error when it recalled the jury and ordered it to continue

its deliberations. Additionally, the trial court should not have allowed the prosecutor to poll the jury, since he waived his right by not making a timely request.

As the United States Supreme Court stated in *Green* v. *United States,* 355 US 184, 188; 78 S Ct 221, 223–224; 2 L Ed 2d 199, 204 (1957):

"It has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offense.'"

When defendants were retried for armed robbery, they were placed twice in jeopardy for the same offense, violating the double jeopardy clause of the United States and Michigan Constitutions. Accordingly, defendants' convictions are reversed, and they are discharged.

Reversed and discharged.

All concurred.