HOFFMAN v MONROE PUBLIC SCHOOLS

MENTEL v MONROE PUBLIC SCHOOLS

Docket Nos. 43836, 43837. Submitted January 17, 1980, at Detroit.—
Decided March 18, 1980. Leave to appeal applied for.

Joan Hoffman, Loretta E. Hoffman and Charles J. Mentel were
passengers in an automobile driven by Rosemary Mentel when
it was involved in a collision with a bus belonging to the
Monroe Public Schools and driven by Jay S. Peters. The Hoff-
mans and the Mentels brought actions for damages against the
Monroe Public Schools and Jay S. Peters. The actions were
consolidated for trial and a jury verdict was returned in favor
of plaintiffs Joan and Loretta Hoffman and Charles Mentel
against both defendants and in favor of defendants against
Rosemary Mentel. The jury was polled and affirmed the verdict
and was discharged. Following discharge the jurors told defense
counsel that they had not meant to find against the the
defendants. Defendants' motion for a new trial was granted,
and the second trial resulted in a verdict and judgment in favor
of the defendants, Monroe Circuit Court, William J. Weipert,
Jr., J. Plaintiffs appeal. *Held:*

Once a jury has been polled and discharged its members may
not challenge mistakes or misconduct inherent in the verdict.
After that point oral testimony or affidavits by the jurors may
only be received on extraneous or outside errors or to correct
clerical errors or matters of form. When a unanimous verdict is
announced in court and that verdict remains uncontroverted on
the record through the end of proceedings, that verdict should
stand unchallenged as it is the best evidence of the jury's
intent. The trial court erred in setting aside the first verdict for
the sole reason of the claimed disparity between the informal
agreement within the jury room and the formal on-the-record
result at trial.

Reversed and remanded for reinstatement of the original
verdict and for judgment on that verdict.

REFERENCES FOR POINTS IN HEADNOTES

[1,2] 76 Am Jur 2d, Trial § 1219 *et seq.*

Competency of jurors' statements or affidavits to show that they
never agreed to purported verdict. 40 ALR2d 1119.

1. JURY — JURORS — VERDICTS — IMPEACHMENT OF VERDICTS.
   Generally, jurors may not impeach their verdict by oral testimony or by affidavit.

2. JURY — JURORS — IMPEACHMENT OF VERDICTS.
   Members of a jury, after the jury has been polled and discharged, may not challenge mistakes or misconduct inherent in the verdict, and oral testimony or affidavits by the jurors may only be received on extraneous or outside errors or to correct clerical errors or matters of form.

*Goldstein, Meklir, Schreier & Feldman,* for plaintiffs.

*William J. Braunlich, Jr.,* for defendants.

Before: M. J. KELLY, P.J., and BRONSON and D. C. RILEY, JJ.

D. C. RILEY, J. This consolidated lawsuit arose out of an automobile accident which occurred in 1969. On March 25, 1976, a jury verdict was returned in favor of plaintiffs Joan and Loretta E. Hoffman and Charles J. Mentel against the defendants and in favor of the defendants against Rosemary Mentel, the driver of the car in which the other three plaintiffs were passengers. The jury was polled individually and affirmed the announced verdict. However, following discharge of the jury, the jurors approached the defendants' attorney and told him that they had not meant to find against defendants. Defendants then moved for and were granted a new trial. This new trial resulted in a verdict being rendered for the defendants on December 29, 1978. Plaintiffs' motion for new trial was denied. Plaintiffs now appeal as of right.

It is generally recognized that jurors may not impeach their verdict by oral testimony or by affidavit, *McDonald v Pless,* 238 US 264, 267; 35 S Ct 783; 59 L Ed 1300 (1915), *Mattox v United*

*States,* 146 US 140, 148-149; 13 S Ct 50; 36 L Ed
917 (1892), *Consumers Power Co v Allegan State
Bank,* 388 Mich 568, 573; 202 NW2d 295 (1972),
*People v Van Camp,* 356 Mich 593, 601; 97 NW2d
726 (1959), *People v Graham,* 84 Mich App 663,
665; 270 NW2d 673 (1978), for, to permit unre-
stricted attacks would severely undermine the
finality attached to judgments. See *People v
Rushin,* 37 Mich App 391; 194 NW2d 718 (1971),
*Santilli v Pueblo,* 184 Colo 432; 521 P2d 170 (1974).
In addition, if the jury's conclusions could always
be questioned, tampering with the jury process
would be encouraged and invasion of the private
sanctity of the jury room invited. *People v Pizzino,*
313 Mich 97, 105; 20 NW2d 824 (1945), *Graham,
supra* at 665-666, *Rushin, supra, People v Lyle
Brown,* 37 Mich App 25, 32; 194 NW2d 450 (1971).
See generally, Mueller, *Juror's Impeachment of
Verdicts and Indictments in Federal Court Under
Rule 606(b),* 57 Neb L Rev 920 (1978), Ledy and
Lefkowitz, Note: *Judgment by Your Peers? The
Impeachment of Jury Verdicts and the Case of the
Insane Juror,* 21 NYLF 57 (1975), Thorpe, Note:
*Evidence—Erroneous Recordation of Verdict—No
Impeachment of Verdict by Affidavits of Jurors
Allowed,* 12 Wayne L Rev 888 (1966). In theory
then, the finality policy is totally justifiable. How-
ever, when these public considerations are bal-
anced against the private concerns of a wronged
litigant, for example, when there has been prejudi-
cial outside influences on the jury or a misrecorded
verdict, flat application of the nonimpeachment
rule may be inequitable. See *McDonald, supra.*
The potential injustice inherent in rigid proscrip-
tion has caused many jurisdictions to modify their
impeachment rules. Under the "Ohio rule" for
instance, juror's affidavits will be considered when
misconduct is first indicated by competent, inde-

pendent evidence. See *Farrer v State,* 2 Ohio St 54 (1853). In at least 12 states, the "Iowa rule" is followed. Under this standard, affidavits are inadmissible to dispute matters which *inhere in the verdict,* such as juror thought processes and interjuror inducements, but are admissible if they pertain to *outside or extraneous influences.* See *Mattox, supra,* 57 Neb L Rev, *supra.*

In Michigan, the present law on verdict impeachment is in great disarray. The advisory committee on adoption of the Michigan Rules of Evidence expressly declined to adopt a state counterpart of FRE 606(b) which would limit inquiry into the validity of a verdict or indictment; thus, we have no statutory guidelines. Committee Notes to MRE 606. Within the case law, there is language supportive of the "Iowa rule", but this standard has never been expressly adopted. See *Graham, supra, People v Moreland,* 12 Mich App 483; 163 NW2d 257 (1968). There are two Supreme Court cases that dealt with this issue within the second half of this century, but neither formulated any consistent doctrine. See *Metz v City of Bridgman,* 371 Mich 586; 124 NW2d 741 (1963), *Routhier v Detroit,* 338 Mich 449; 61 NW2d 593 (1953). Finally, one panel of this Court attempted to clarify the motivations and standards underlying verdict finality but, evidently, was stymied by the earlier inconsistent and confusing rulings. See *Rushin, supra.*

In *Routhier, supra,* the Supreme Court upheld the trial court's recalling of the jury the day after discharge. The Court stated that the judge properly set aside the verdict based on a juror's affidavit that he had never agreed to the recorded verdict. In *Metz, supra,* the jury was polled and discharged. The Supreme Court upheld the trial

court's denial of a new trial despite a juror's affidavit that he had only reluctantly agreed to the verdict. The Court "distinguished" *Routhier* by saying that in *Metz* there was a unanimous verdict (no matter for what reason) while in *Routhier* there apparently was not. This was in spite of the fact that in both cases a unanimous verdict was announced on the record.

Confronted with this divergent case law, the Court of Appeals panel in *Rushin, supra,* chose to limit its post-discharge jury problem decision to *criminal* cases. Although this distinction was declared to be based on the double-jeopardy clause, most of the policy and reasoning put forth by the panel throughout the opinion applies equally to both civil and criminal cases.

It is clear that in jurisdictions applying the "Iowa rule", the claimed error in the instant case could not be investigated through juror affidavits. Looking behind a verdict to determine if the finding is contrary to the jury's intent is directly contrary to the rule prohibiting examination of jury mental processes. *Mitchell v Burleson,* 466 SW2d 646 (Tex Civ App 1971). In *Ford Motor Credit Co v Amodt,* 29 Wis 2d 441; 139 NW2d 6 (1966), eight jurors claimed that the verdict was incorrect. The Supreme Court of Wisconsin held that this was not a proper subject for post-discharge investigation. The Colorado Supreme Court has held similarly. *Santilli, supra.*

A clear dividing line between allowing and disallowing verdict correction has been the discharge of the jury, often precursed by individual polling. Jury comment regarding errors inherent in the verdict will not be received after the jury is so released. *Van Wart v Van Wart,* 501 SW2d 359 (Tex Civ App 1973), *Ford Motor Credit Co, supra.*

Michigan courts have recognized jury discharge, frequently coupled with polling, as the final expression or act of the jury. *Metz, supra, In re Sorter's Estate,* 314 Mich 488, 493; 22 NW2d 767 (1946), *Beaubien v Detroit United R Co,* 216 Mich 391, 398; 185 NW 855 (1921), *Brown, supra, Rushin, supra.* Thus, it is only logical to incorporate this termination point into our adoption of the "Iowa rule".

We hold that in all cases, whether civil or criminal, once a jury has been polled and discharged, its members may not challenge mistakes or misconduct inherent in the verdict. After that point, oral testimony or affidavits by the jurors may only be received on extraneous or outside errors (such as undue influence by outside parties), or to correct clerical errors or matters of form. See *Mattox, supra, Harrington v Velat,* 395 Mich 359; 235 NW2d 357 (1975), *Hampton v Van Nest's Estate,* 196 Mich 404; 163 NW 83 (1917), *Marchlewicz v Stanton,* 50 Mich App 344; 213 NW2d 317 (1973). Information on extraneous errors has always been permissible under the "Iowa rule", since it does not relate directly to the thought processes or inner workings of the jury. We carve out an exception for clerical errors since, presumably, the correct information will already exist on the record and it will merely be a matter of conforming the written judgment to the earlier in-court statements; no invasion of the juror's room or minds will be necessitated.

We acknowledge that a better rule would be that prohibited information will not be received following discharge alone, rather than following polling *and* discharge. However, this delineation would conflict with the almost 30-year-old case of *Routhier.* We believe that *Routhier* was wrongly

decided and invite the Supreme Court to overrule
that case and accordingly modify the standard
outlined here. Since polling is a procedure that is
waived if not promptly asserted, *People v Willie
Johnson,* 58 Mich App 165, 169; 227 NW2d 272
(1975), *Rushin, supra* at 399-400, we believe that it
was error in *Routhier* for the judge to conduct a
poll the *day after* trial had ended. Further, our
case law is replete with recognition of the princi-
ple that the jurors' function as a jury terminates
at discharge. *Beaubien, supra, Rushin, supra.* We
are persuaded, therefore, that it was wrong for the
trial judge in *Routhier* to reassemble the jurors
after their discharge and dispersion to the influ-
ence of the community at large. Finally, we find
no real distinction between *allowing* questioning of
jury proceedings where there is a claimed lack of
unanimity in the agreement reached in the jury
room *(Routhier)* as opposed to *not allowing* ques-
tioning where there is a claimed lack of unanimity
in the reasoning supporting that agreement *(Metz).*
When a unanimous verdict is announced in court
and that verdict remains uncontroverted on the
record through the end of proceedings, we believe
that that verdict should stand unchallenged as it
is the best evidence of the jury's intent. See *Beau-
bien, supra* at 398. At no other point can one be
more sure that the statement represents the un-
contaminated, freewilled choice of the jury.

In *Pizzino, supra,* 105, the Supreme Court
quoted from 8 Wigmore on Evidence (3rd ed),
§ 2355, p 4:

" 'Hence, the fact that the verdict as delivered was by
one or more individual jurors not assented to by them
in the jury-room, or *is different from the one there
informally assented to by them, is no ground for later*

*correcting or setting aside the verdict.'* " (Emphasis added.)

We must conclude that the judge in this case erred in setting aside the first verdict following individual polling and the discharge of the jury, when the sole reason for doing so was the claimed disparity between the informal agreement within the jury room and the formal, on-the-record, unanimously and individually reiterated result at trial. See *Metz, supra, Rushin, supra.* This error unequivocally mandates reversal.

In light of the disposition of this case, plaintiffs' other contentions need not be addressed.

Reversed and remanded for reinstatement of the original verdict and for judgment on that verdict.