HAMPTON v. VAN NEST'S ESTATE.

1. APPEAL AND ERROR—AFFIDAVITS—RECORD—NEW TRIAL.
   Affidavits filed on a motion for a new trial which were not made part of a bill of exceptions, but extracts from which were printed in the record, are proper to be considered, on appeal, as part of the record, where the trial court considers and refers to them.

2. TRIAL—JURORS—SHERIFF IN JURY ROOM.
   Where the evidence tended to show that the sheriff in charge of a jury was not present during their deliberation and only as occasion required for the purpose of replenishing the fire in the room and furnishing water to the jury, the denial of a motion for new trial upon the ground that he was in the jury room with the jury and within hearing while they were deliberating on their verdict, was not erroneous.

3. SAME—CONDUCT OF OFFICERS—JURORS.
   The court should not countenance or tolerate any act or conduct by court officers that might influence the conduct of any member of the jury in favor of either party in reaching conclusions in the case they are considering.

4. SAME—SEPARATION OF JURY—NEW TRIAL.
   The separation of the jury by consent of the parties before arriving at a verdict and going for supper to their respective boarding houses unaccompanied by an officer, is not ground for new trial, where no prejudice is shown.

5. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
   A motion for new trial on the ground of newly-discovered evidence, is properly denied where a showing in compliance with the statute is not made, no witnesses being named nor the proposed testimony or affidavits set out.

6. TRIAL—INSTRUCTIONS—BURDEN OF PROOF.
   In an action on a claim against an estate, an instruction on the burden of proof that "By the burden of proof as a legal term we understand that the party asserting a claim, the claimants in this case, must produce to the jury testimony of that weight, character and sufficiency which overcomes in the mind of each juryman any testimony opposed to it," was not reversibly erroneous.

7. EXECUTORS AND ADMINISTRATORS—CLAIMS—BILLS AND NOTES—
BURDEN OF PROOF.
    Where a claim on a note is filed in the probate court
against an estate and appealed to the circuit court, the
burden of proof as to the execution of the note is all
the time on the claimant.

8. SAME—CLAIMS—FILING AFFIDAVITS—COURT RULES.
    In an action in the probate court upon a note purporting
to have been executed by the decedent, it lies within the
discretion of the court to permit the filing in the circuit
court, upon appeal to that court, of an affidavit denying
the execution of such note by decedent, under Circuit
Court Rule 33, if such rule is applicable to cases appealed
from the probate court.

Error to Sanilac; Beach, J. Submitted April 9,
1917. (Docket No. 111.) Decided May 31, 1917.

Charles S. Hampton presented a claim against the
estate of John W. Van Nest, deceased, for the amount
of several promissory notes. The claim was disallowed
in the probate court, and claimant appealed to the cir-
cuit court. Judgment for defendant. Claimant brings
error. Affirmed.

*Victor H. Hampton,* for appellant.

*C. F. Gates* for appellee.

STONE, J. This case originated in the probate court
of Sanilac county. The claim of the plaintiff having
been disallowed by the commissioners on claims, there
was an appeal to the circuit court for said county.
This case and three others came on to be heard in the
circuit court in accordance with a stipulation which
provided that the said four cases might and should be
tried at one and the same time by the same jury; that
a separate verdict might and should be asked and
taken for each case and separate judgments entered
therein, but that the testimony which was competent
and admissible in any of the cases should be taken

and received at such trial, and its competency, relevancy, and admissibility as to the several cases should be taken care of by the court in its charge. The result is a very bungling and unsatisfactory record. As we understand it, all of the claims of all of the plaintiffs or claimants grow out of promissory notes claimed and purporting to have been made by said J. W. Van Nest in his lifetime. The plaintiff, Charles S. Hampton, was a practicing attorney. He had been employed by one R. H. Evans, and had rendered services for Evans to the amount of $200. On May 4, 1914, said Evans came to Mr. Hampton and exhibited to him seven promissory notes of $30 each, dated June 4, 1913, with interest at 6 per cent. per annum, payable to the Evans Land Company, one of which was due 20 months after date, and the others at successive intervals of one month each, and all purporting to be made and signed by J. W. Van Nest. Evans on that occasion offered to pay plaintiff what he owed him if he would accept said notes in payment.

After making inquiry concerning the notes, and the property owned by the alleged maker, and being informed by said Evans that the Evans Land Company, the payee in the notes, was a partnership composed of himself and brother, and that he had authority to sign the partnership name, and was in full charge of the business, Mr. Hampton consented to accept the seven notes for his services. He accordingly gave a receipt in full for $200 and paid the difference of $10 in cash to Evans, who indorsed the notes in the name of the Evans Land Company, per R. H. Evans. It appears that Mr. Van Nest had died in January or February, 1914. At the time Mr. Hampton took the notes he was not aware of any defense to them on the part of said estate, and had no knowledge, notice, information, or suspicion that there was anything irregular about the notes or that they were not given for a valid considera-

tion.  On October 5, 1915, the case came on for trial in the circuit court before a jury.  Before the jury was impaneled one of the attorneys for the plaintiff stated that it appeared to him that an issue of fact ought to be framed in the case.  After the jurors had been examined and sworn, and the opening statement had been made by Mr. Hampton, the attorney for the estate said:

"Now, your honor, if that is the issue, it will be necessary to file some things in writing; some are absolutely necessary to file in writing.

"*Mr. Hampton:* If it was necessary to file them in writing, I should think the time these have been pending—

"*Mr. Gates:* We didn't know there was to be an issue framed until this moment."

After the noon recess the court said:

"Have you filed your pleas?

"*Mr. Gates:* Yes.  (Reads paper.)  Our plea is the same as would be the general issue regularly filed at the time, 'The defendant comes and demands a trial upon the matters claimed by the claimants,' with an affidavit supplementing the notice denying execution of the notes.

"*Mr. Babcock:* The claimants each object to the filing of the affidavit denying the signatures of the notes at this time.  The notes have been filed and delivered to the commissioners on claims, and no affidavit filed denying the execution of the notes at that time.  The affidavit comes too late, and takes claimant by surprise, and raises an issue that was not raised at the hearing.

"*Mr. Gates:* In reply to that we will say that there is no rule for filing an affidavit in the probate court; they must prove the execution; under the common law you must prove the execution in all cases.

"*The Court:* The objection is overruled.  The formal issue may be filed, and the trial proceed under it."

Whereupon, without any exception to the ruling, the affidavit denying the execution of the notes was filed,

and the trial proceeded. After the testimony of numerous witnesses pro and con as to the genuineness of the signature of the notes was taken, the case was submitted to the jury, which rendered a verdict disallowing the plaintiff's claim, and judgment accordingly followed.

At the close of the charge of the court to the jury the following occurred:

"*The Court:* If the jury does not agree by supper time, is there any objection to their separating and going to their boarding places?

"*Mr. Babcock:* No.

"*Mr. Gates:* No.

"*The Court:* Very well, you may do so in that case, with the caution not to receive any information or talk from any one. If any one desires to talk with you, report it to the court."

It is undisputed that the jury did separate and go to their respective boarding places before arriving at a verdict, unaccompanied by an officer of the court.

It was the claim of the plaintiff that the sheriff, who was in charge of the jury while deliberating upon their verdict, remained in the same room with the jury during their deliberations; and this claim, as well as the fact that the jury separated, was made, with other reasons, the basis of two motions for a new trial, both of which were denied, and exceptions duly taken. The plaintiff has brought the case here on writ of error, and by appropriate assignments of error the following propositions are argued:

1. That the court erred in refusing a new trial, because the sheriff in charge of the jury was present in the jury room with the jury, and within hearing, while they were deliberating upon their verdict up to, and including the time they reached a verdict. This point was urged upon a motion for a new trial, and there were numerous affidavits filed in support of, and opposed to, the motion.

It is urged by the appellee that this question is not properly before the court, for the reason that the affidavits are not made a part of the bill of exceptions signed by the circuit judge, but that extracts from such affidavits have been printed in the record, forming no part of the bill of exceptions, and reference is made to section 63 of chapter 18 of the judicature act (Pub. Acts 1915, Act No. 314, 3 Comp. Laws 1915, § 12635), which provides:

"The party appealing the same may incorporate in the bill of exceptions a record of all proceedings had on said motion for a new trial, including the reasons given by the trial judge in refusing to grant said new trial."

The affidavits appear to have been considered by the trial court, and we are disposed to treat them as a part of the record as they are referred to by the court below.

A question of fact was here presented to the circuit judge as to whether the sheriff was actually present with the jury during their deliberations. The affidavits are contradictory. The affidavits of the sheriff and a number of the jurors were to the effect that the sheriff was called into the jury room, which was a town hall consisting of one room, to replenish the fire and furnish water for the jurors, and that he heard no part of their deliberations, and entered into no conversation with them. The circuit judge in denying the motion said:

"The presence of the sheriff, from the showing made, was within the line of his duties and required, under the circumstances, the county building having been destroyed, and the city hall was designated. It is a single room with a small lobby, the evening was wet and cold, and the rooms were heated by a single coal stove, and the court is satisfied that the sheriff in charge of the jury violated no part of the spirit of his oath."

It is urged by appellant that the cases of *People* v. *Knapp,* 42 Mich. 267 (3 N. W. 927, 36 Am. Rep. 438), *People* v. *Hoffman,* 142 Mich. 531 (105 N. W. 838), and *Goby* v. *Wetherill* [1915], 2 K. B. 674, are controlling of this case. An examination of *People* v. *Knapp, supra,* will show that in that case when the jury retired to consider of their verdict an officer accompanied them, and remained in the room during their deliberations. The same may be said of the English case, the court saying:

"The town sergeant went into the retiring room with the jury, and remained there for about twenty minutes while they were considering their verdict."

Those cases are distinguished from the instant case, as the facts were found by the circuit judge from the affidavits filed. We are not disposed to disturb the finding of the circuit judge upon the question of fact here presented; there being evidence that the sheriff was not present during any of the deliberations of the jury.

The doctrine is well established that the court should not countenance or tolerate any act or conduct by court officers that might influence the conduct of any member of the jury in favor of either party in reaching conclusions in the case they are considering. This subject is treated in 38 Cyc. p. 1826, where the following cases are referred to: *Williams* v. *Railway Co.,* 11 S. D. 463 (78 N. W. 949) ; *Edward Thompson Co.* v. *Gunderson,* 10 S. D. 42 (71 N. W. 764).

2. It is next urged that the court erred in not granting a new trial because the jury, before arriving at a verdict, were allowed to separate and go to their respective boarding houses to eat supper, unaccompanied by an officer. Bearing in mind that this course of conduct was expressly assented to by counsel for appellant in open court, as appears by the record, we do not

think that the court erred in denying a new trial upon this ground. The subject is treated in 38 Cyc. pp. 1820, 1821, and numerous cases are cited, among others, *Iowa Savings Bank* v. *Frink,* 1 Neb. (Unof.) 14, 26 (92 N. W. 916), holding that separation of the jury after submission of the case by consent of counsel will not warrant a reversal where it appeared that neither party was prejudiced by such action. Other cases are cited in the note to the same effect. Relating to a similar irregularity see *Miller* v. *Young, ante,* 276 (162 N. W. 160).

It is a well-known fact that in the Federal courts held within this State it is the usual practice to permit jurors to separate and go to their lodgings and meals after their deliberations to consider of their verdict in the case are entered upon. There is nothing in this record to indicate that either party was injured by the course here adopted, but it is a practice not to be commended under our system.

*Spencer* v. *Johnson,* 185 Mich. 85 (151 N. W. 684), is referred to by appellant, and some of the language used by this court is quoted in the brief. We find nothing in the record raising any presumption that the appellant was prejudiced by this conduct of the jury.

3. It is further urged that the court erred in denying the motion for a new trial because of newly-discovered evidence, which would result in a different verdict on a retrial of the case. We are content upon this subject to quote the language of the trial judge wherein he said:

"The showing of newly-discovered evidence is not in compliance with the practice, no witnesses are named, nor is the proposed testimony or affidavits of witnesses set out, and the court is left to simple conjecture as to the materiality of the proposed evidence."

It may be said in passing that the last motion for

a new trial was denied by the circuit judge upon the same grounds as stated in the denial of the first motion.

4. The next assignment of error which is argued by counsel is to the effect that the court erred in its charge to the jury with reference to the burden of proof, and required the plaintiff to prove his case by a greater degree of proof than the law required.

It appears that the portion of the charge complained of was the following:

"The same rule applies to the claimants in this case as would to the ordinary plaintiff in commencing a suit in this court. Parties that bring their claims into court and assert that they have a valid claim, the burden of proof is put upon them, upon the claimants, to show the validity of their claims, the merits of their claims; more especially so in these cases because the estate, the administrator defending, has caused an affidavit to be filed denying the genuineness of the signatures of the various notes belonging to the various parties who bring the claims into court. Filing that affidavit placed upon the claimants the burden of proof, as we call it, to show that the signatures to those notes, each of them, are the genuine signatures of John W. Van Nest, deceased. By the burden of proof, as a legal term, we understand that the party asserting a claim, the claimants in this case, must produce to the jury testimony of that weight, character, and sufficiency, which overcomes in the minds of each juryman any testimony opposed to it. That is what we understand by the burden of proof. The testimony of the claimants in this case must be of that character that it overcomes in your minds all testimony opposed to their claim.

"Now, you have heard the testimony in the case on the part of the claimants and on the part of the estate. It is your duty to weigh the testimony when it is introduced and to say what weight and character you will give each item of testimony as it is introduced before you; that is your peculiar duty as jurymen, to weigh the testimony and find for yourselves where the truth of the testimony is and whether the burden has been sustained or not."

Special stress is laid upon the following language appearing in the above excerpt:

"By the burden of proof, as a legal term, we understand that the party asserting a claim, the claimants in this case, must produce to the jury testimony of that weight, character, and sufficiency, which overcomes in the minds of each juryman any testimony opposed to it. That is what we understand by the burden of proof. The testimony of the claimants in this case must be of that character that it overcomes in your minds all testimony opposed to their claim."

When taken in connection with the other language used, we doubt if the court intended or can be held to have here required any greater degree of evidence than that of preponderance in favor of the claimant. When the testimony of a plaintiff preponderates in his favor, it is not improper to say that it overcomes the evidence upon the other side. Manifestly it must overcome it in weight in order to preponderate in favor of the plaintiff. The evidence must be heavier, and may be said to overcome by weight the evidence upon the other side. Many of our cases are referred to by appellant, but we do not think any of them controlling of the question here presented, and we find no reversible error in the charge.

5. The next question that is discussed is that the affidavit of nonexecution of the notes was filed too late and should not have been allowed. At the time of the trial old Circuit Court Rule No. 8 was in force, which we find to be precisely like the present Circuit Court Rule No. 33. We doubt if it is applicable to cases appealed from the probate court. We think the burden was upon the claimant all the time to make his case and prove the execution of the instruments claimed to have been executed by the deceased. If, however, the rule or the spirit of it did apply, it was certainly, under our ruling, within the discretion of

the court to permit the amendment to be made; for the rule expressly provides that:

"The court may, upon proper showing, enlarge the time for filing such affidavit."

There was no error in the ruling of the court upon this subject.

We find no other question presented which in our opinion requires discussion. There being no reversible error in the record, the judgment of the court below is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.