BRILLHART v MULLINS

Docket No. 63567. Submitted May 3, 1983, at Detroit.—Decided August 16, 1983.

Ivan S. and Constance A. Brillhart brought an action in Wayne Circuit Court against Milford Mullins and Milford D. Mullins for damages for injuries suffered in an automobile accident. The jury found in favor of plaintiffs. The award to Constance Brillhart was in the amount of $50,000, but she was found to be 30% negligent, thus the award was reduced to $35,000. Before entry of judgment defendants filed a motion for a new trial or for *remittitur,* contending that the jury intended to award Constance Brillhart only $15,000. The motion was accompanied by affidavits from each of the jurors indicating that it had been their intention to award 30% of $50,000, or $15,000. The trial court, Charles S. Farmer, J., reconvened the jury and after taking testimony from the jurors granted the motion for *remittitur,* reduced the award to $15,000, and entered judgment in that amount. Plaintiffs appeal, alleging that the trial court erred in holding that the jury committed an error which warranted reconvening the jury and changing the verdict to conform to the jurors' testimony. *Held:*

A jury's verdict may not be impeached by oral testimony or affidavits except to correct a clerical error which was, in fact, made by the jury in mistakenly recording information relating to the verdict. Affidavits are not admissible to controvert matters which inhere in the verdict but are admissible if they pertain to outside or external influences. In this case the affidavits clearly relate to a matter inherent in the verdict, that is, the jurors' apparent inability to understand the formula used at arriving at an award in a comparative negligence situation. Furthermore, the jury was carefully polled and there was no clerical error involved. The trial court erred in admit-

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Trial § 1219.
[2] 76 Am Jur 2d, Trial § 1223.
[3] 76 Am Jur 2d, Trial §§ 1225, 1226.

ting the affidavits and testimony for purposes of changing the verdict.

Reversed and remanded for reinstatement of the original verdict.

1. JURY — IMPEACHMENT OF JURY VERDICT.

Generally, jurors may not impeach their verdicts by oral testimony or affidavits; the purposes of the rule are (1) to foreclose jurors from impeaching their findings by asserting their own misconduct, (2) to prevent tampering with the jury subsequent to the discharge of the jury, (3) to avoid undermining the finality and certainty of judgments, and (4) to discourage the invasion of mental processes used to arrive at verdicts.

2. JURY — IMPEACHMENT OF JURY VERDICT — AFFIDAVITS OF JURORS.

Affidavits of jurors are inadmissible to controvert matters which inhere in the verdict, such as thought processes and inter-juror communications, but are admissible if they pertain to outside or external influences.

3. JURY — IMPEACHMENT OF JURY VERDICT — CLERICAL ERRORS.

The exception to the rule that a jury's verdict may not be impeached by oral testimony or affidavits which permits the use of affidavits to correct a clerical error is limited to instances where the jury, in fact, mistakenly recorded information relating to the verdict; the mere claim of a jury, through affidavits, that it intended a different outcome does not, ipso facto, require a modification of the verdict or the granting of a new trial.

*Donald D. Unwin,* for plaintiffs.

*Mitchell & Leon* (by *Arthur W. Mitchell),* and *Gromek, Bendure & Thomas* (by *James G. Gross),* of counsel, for defendants.

Before: GRIBBS, P.J., and BRONSON and BEASLEY, JJ.

BEASLEY, J. On March 4, 1978, plaintiffs, Ivan S. and Constance A. Brillhart, husband and wife, were injured when an automobile driven by her and in which he was a passenger was struck by an automobile driven by defendant Milford Dale Mul-

lins and owned by defendant Milford Mullins. Plaintiffs sued defendants[1] for damages in the Wayne County Circuit Court. Judgment was entered for $15,000 in favor of plaintiff Constance A. Brillhart after the jury was reconvened to correct an alleged mistake in the amount of the verdict. Plaintiffs appeal as of right.

In a special verdict form, the jury made the following findings in regard to the claim of Constance A. Brillhart (hereinafter plaintiff):[2]

"*Question No. 1:* Was the defendant negligent?

"*Answer:*   Yes   (yes or no)

"If your answer is 'no', do not answer any further questions.

\*   \*   \*

"*Question No. 2:* Did the plaintiff, Constance A. Brillhart sustain economic loss damages consisting of loss of earning capacity after 3-4-81?

"*Answer:*   No   (yes or no)

"If your answer is 'no', do not answer Questions No. 3 and 4; go on to Question No. 5.

\*   \*   \*

"*Question No. 5:* Was the defendant's negligence a proximate cause of an injury to the plaintiff, Constance A. Brillhart?

"*Answer:*   Yes   (yes or no)

"If your answer is 'no', and you have not answered Question No. 4, do not answer any further questions.

"If your answer is 'no', and you have answered Question No. 4, do not answer Question No. 7; go on to Question No. 8.

\*   \*   \*

---

[1] Defendant Milford Mullins's liability was premised upon the owners' liability statute, MCL 257.401; MSA 9.2101.

[2] A $5,000 verdict was rendered in favor of plaintiff Ivan S. Brillhart, who was a passenger in the car operated by Constance A. Brillhart.

"*QUESTION No. 7:* What is the total amount of plaintiff, Constance A. Brillhart's noneconomic loss damages?

"*Answer:* $50,000

"If you have not answered Question No. 4 and Question No. 7, do not answer any further questions.

"If you have answered either Question No. 4 or Question No. 7, or both, go on to Question No. 8.

"CONTRIBUTORY NEGLIGENCE CLAIM

"*QUESTION No. 8:* Was the plaintiff, Constance A. Brillhart negligent?

"*Answer:*   Yes   (yes or no)

"If your answer is 'no', do not answer any further questions.

"*QUESTION No. 9.:* Was the plaintiff, Constance A. Brillhart's negligence a proximate cause of the injury or damages to plaintiff, Constance A. Brillhart?

"*Answer:*   Yes   (yes or no)

"If your answer is 'no', do not answer any further questions.

"*QUESTION No. 10:* Using 100% as the total combined negligence which proximately caused injury or damages to plaintiff, Constance A. Brillhart, what percentage of such negligence is attributable to plaintiff, Constance A. Brillhart?

"*Answer:*   30   percent.

"Please note that the court will reduce the total amount of plaintiff Constance A. Brillhart's damages entered in Questions No. 4 and 7 by the percentage of negligence attributable to the plaintiff, Constance A. Brillhart, if any, entered in Question No. 10. The remainder will be the amount which plaintiff, Constance A. Brillhart is entitled to recover."

After the foreman read the jury's verdict indicating that the total noneconomic loss of Constance Brillhart was $50,000 and the percentage of negligence attributable to her was 30%, the following occurred:

"*The Court:* Thank you. Members of the jury, your verdict will be recorded and received as your verdict. On behalf of the attorneys, the plaintiff, and the court we wish to thank you for your efforts, your diligence, and you being here with us serving as jurors. Any time you wish to come back we will be happy to have you come back and visit us. Thank you, very much.

"Should we read back each and all of the questions?

"*Mr. Mitchell [defense counsel]:* I would like the jury polled.

"*The Court:* Let's read them all back to them."

The clerk then re-read to the jury the above quoted questions and answers from the special verdict form, following which:

"*Mr. Mitchell:* Might I take something up in chambers with the court before the jury is polled?

"*The Court:* Yes.

"*(Both counsel and the court went in chambers, and the proceedings went off record.)*

"*(Back on the record.)*

"*The Court:* Will you read Question No. 10?

"We are going to read Question No. 10 over to you members of the jury to make sure you understand that.

"*The Clerk:* 'Question No. 10: Using 100% as a total combined negligence which proximately caused injury or damages to plaintiff, Constance A. Brillhart, what percentage of such negligence is attributable to plaintiff, Constance A. Brillhart?

"I have as an answer '30 percent'.

"Mr. Foreman, members of the jury, are these the questions and answers submitted by you?

"*Mr. Foreman:* Yes.

"*The Court:* The question was were you under the impression that it is 30% negligence on the part of Constance A. Brillhart, and 70% negligence on the part of the driver of the other automobile?

"*Mr. Foreman:* Yes, your Honor.

"*The Court:* Will you ask all the jurors that?

"*The Clerk:* So say you, Mr. Foreman, so say you

members of the jury, are these the questions and your answers as submitted to you?

"*The Foreman:* Yes.

"*The Court:* Do you understand the question now, as far as the amount of negligence, percentage wise, of each party; is there any question in your minds about it?

"You may be seated, sir.

"*The Clerk:* Ann Malone, are these your answers to the questions submitted to you?

"*Juror No. One:* Yes."

Each juror was similarly polled.

Before the entry of the two judgments (one for each plaintiff), defendants filed a motion for a new trial or *remittitur,* contending that the jury intended to award Constance Brillhart the net amount of $15,000. According to defense counsel, the jurors expressed to him, in the presence of the court officer, that they did not properly apply the comparative negligence formula, as they intended to award plaintiff the net sum of $15,000. Appended to defendants' motion were affidavits from the seven jurors, each of which contained the following statements:

"I, ___[juror],___ show unto this honorable court, that I was a juror in the above entitled matter, and returned a verdict in favor of plaintiffs on February 25, 1982.

"This verdict was initially in the form in favor of plaintiff, Ivan Brillhart in the amount of \*\*\*five thousand dollars and no cents\*\*\* ($5,000.00), and in favor of plaintiff Constance A. Brillhart in the amount of \*\*\*fifteen thousand dollars and no cents\*\*\* ($15,000.00), further finding her negligent.

"The jurors were then instructed to return to the jury room to determine the percentage of plaintiff Constance A. Brillhart's negligence so as to reduce her award.

"We then determined her verdict to be $50,000.00 and put thirty percent on the jury form. It was our intention to award her thirty (30) percent of ***fifty thousand dollars and no cents*** ($50,000.00), or ***fifteen thousand dollars and no cents*** ($15,000.00), as we originally determined.

"It was not until after we were leaving and after talking to the attorney for the defendants, in the presence of the court officer, that we learned we applied the court's instruction in a manner we did not intend to, and in fact misunderstood the application of the jury form formula.

"The resulting verdict of ***thirty-five thousand dollars and no cents*** ($35,000.00), for plaintiff Constance Brillhart was not what I intended it to be, my thought and intention was that the verdict in her favor should have been, as originally indicated, in the amount of ***fifteen thousand dollars and no cents*** ($15,000.00)."

Over plaintiffs' objection, the trial court granted defendants' motion to reconvene the jury. On March 23, 1982, about four weeks after the verdicts were rendered, the trial court held an evidentiary hearing. Of the seven jurors who heard the trial, six appeared at the evidentiary hearing. Each of the six jurors testified under oath, outside of the presence of each other, as to the verdict they arrived at and to the award that they intended to make. Illustrative of this testimony is the following exchange:

*"The Court:* NUMBER 10: 'Using 100% as the total combined negligence which proximately caused injury or damage to the plaintiff Constance A. Brillhart, what percentage of such negligence is attributable to the plaintiff Constance A. Brillhart?' The answer to that was '30 percent'. Was that your intention, and was that your answer?

*"Ms. Williams [juror]:* Yes.

*"The Court:* Apparently in some discussions with the

jurors after you had entered your verdict, it has been indicated to this court that the intent of the jurors was for her to have received a different figure, or that was a mistake. Can you make any account—if it was a mistake, can you tell the court how it occurred, or if there was one, from your understanding?

"*Ms. Williams:* We had thought that—well, we had figured 15 and we didn't realize—we didn't want to make it sound like she was more fault; so we put down the 30%.

"*The Court:* What money damages did you figure that she was entitled to receive; what did you feel that she was entitled to receive?

"*Ms. Williams:* Fifteen thousand.

"*The Court:* Fifteen thousand?

"*Ms. Williams:* Uh huh.

"*The Court:* Mr. Unwin?

"*Mr. Unwin [plaintiffs' attorney]:* Yes. Mrs. Williams, your answer to Question 7, as to the total amount of plaintiff Constance A. Brillhart's noneconomic loss damage was $50,000; is that correct?

"*Ms. Williams:* Yes.

"*Mr. Unwin:* What you're saying, I believe, at this time is that that was a proper figure for the total amount of her damages, but you're asking the court to change the answer to Number 10; is that right?

"*Ms. Williams:* Yes.

"*Mr. Unwin:* You're asking the court to change the figure of 30%, which was recorded by your foreman as your verdict, to 70%; is that right?

"*Ms. Williams:* Yes.

"*Mr. Unwin:* Isn't it a fact, Mrs. Williams, that the figure 70% was not discussed by the jury in the jury room?

"*Ms. Williams:* Yes, that's true.

"*Mr. Unwin:* You never discussed 70%?

"*Ms. Williams:* No, because we had thought the 30% from deductions, I guess, we figured that it would round out to 15.

\*    \*    \*

"*Mr. Unwin:* What you're saying then is that you as

a jury made a mistake in the insertion of the answer to Question No. 10. Is that correct?

"*Ms. Williams:* Yes.

"*Mr. Unwin:* What you want the court now to do is to change the 30% to 70%; is that correct?

"*Ms. Williams:* Yes.

"*Mr. Unwin:* In spite of the fact that you and the other members of the jury never discussed the figure of 70%; is that correct?

"*Ms. Williams:* Yes.

\* \* \*

"*Mr. Mitchell [defense counsel]:* Mrs. Williams, again, it was your intention that Mrs. Brillhart receive $15,-000 as a net sum?

"*Ms. Williams:* Yes.

"*Mr. Mitchell:* In effect, when you used the figure 30%, you thought that she would get 30% of $50,000.00, which would be $15,000.00?

"*The Court:* Will you repeat that?

"*Mr. Mitchell:* In effect, when you used the figure of 30%, you felt that she would get 30% of $50,000.00, which would be $15,000.00?

"*Ms. Williams:* Yes.

"*Mr. Mitchell:* By mistake the figure of 30 was inserted instead of the figure 70?

"*Ms. Williams:* Yes."

At the conclusion of the evidentiary hearing, the trial court granted defendants' motion for *remittitur*,[3] reducing the $35,000 verdict to $15,000.

On appeal, plaintiff raises one issue, maintaining that the trial court erred in holding that the jury committed an error which warranted reconvening the jury and correcting the verdict to conform to the testimony at the evidentiary hearing.

The general rule is that jurors may not impeach

---

[3] The correct entitlement of defendants' motion is "Motion To Alter or Amend a Judgment", GCR 1963, 527.5.

their verdicts by oral testimony or affidavits.[4] This rule serves the purpose of foreclosing jurors from impeaching their findings by asserting their own misconduct.[5] Other reasons for disallowing the impeachment of verdicts are: (1) to prevent tampering with the jury subsequent to the discharge of the jury,[6] (2) to avoid undermining the finality and certainty attached to judgments,[7] and (3) to discourage the invasion of mental processes used to arrive at verdicts.[8]

Under these precepts, jurors' affidavits are inadmissible to controvert matters which inhere in the verdict, such as thought processes and inter-juror communications, but are admissible if they pertain to outside or external influences.[9] It is a wise policy that seeks to insulate jurors from the troublesome and unhealthy pressures of litigants, lawyers, and the media.

In *Hoffman v Monroe Public Schools*,[10] this Court carefully delineated the history of this issue in Michigan and opted for a very limited exception to the general rule prohibiting impeachment of jury verdicts:

"We hold that in all cases, whether civil or criminal,

---

[4] *McDonald v Pless*, 238 US 264, 267; 35 S Ct 783; 59 L Ed 1300 (1915); *Consumers Power Co v Allegan State Bank*, 388 Mich 568, 573; 202 NW2d 295 (1972); 89 CJS, Trial, § 523, pp 214-215.

[5] *United States v 120,000 Acres of Land*, 52 F Supp 212 (ND Tex, 1943); *In re Merriman's Appeal*, 108 Mich 454, 463; 66 NW 372 (1896).

[6] *People v Pizzino*, 313 Mich 97, 105; 20 NW2d 824 (1945).

[7] *Jorgensen v York Ice Machine Corp*, 160 F2d 432 (CA 2, 1947); McCormick, Evidence (2d ed), § 68, pp 148-149.

[8] 76 Am Jur 2d, Trial, § 1219, p 175; *People v Lyle Brown*, 37 Mich App 25, 32; 194 NW2d 450 (1971).

[9] See *Mattox v United States*, 146 US 140, 148-149; 13 S Ct 50; 36 L Ed 917 (1892); *People v Van Camp*, 356 Mich 593, 601-602; 97 NW2d 726 (1959).

[10] 96 Mich App 256, 261; 292 NW2d 542 (1980), *lv den* 409 Mich 931 (1980).

once a jury has been polled and discharged, its members may not challenge mistakes or misconduct inherent in the verdict. After that point, oral testimony or affidavits by the jurors may only be received on extraneous or outside errors (such as undue influence by outside parties), or to correct clerical errors or matters of form. * * * Information on extraneous errors has always been permissible under the 'Iowa rule', since it does not relate directly to the thought processes or inner workings of the jury. *We carve out an exception for clerical errors since, presumably, the correct information will already exist on the record and it will merely be a matter of conforming the written judgment to the earlier in-court statements; no invasion of the juror's room or minds will be necessitated."* (Emphasis added.)

In *Hoffman,* a jury verdict was rendered in favor of the plaintiffs. Subsequent to the polling and discharge of the jury, the jurors approached the defense attorney and advised him that it was not their intention to find against defendants. The trial court granted defendants' motion for a new trial. In reinstating the original jury verdict, the *Hoffman* Court stated:

"When a unanimous verdict is announced in court and that verdict remains uncontroverted on the record through the end of proceedings, we believe that that verdict should stand unchallenged as it is the best evidence of the jury's intent. See *Beaubien [v Detroit United R Co,* 216 Mich 391; 185 NW 855 (1921)], *supra,* 398. At no other point can one be more sure that the statement represents the uncontaminated, free-willed choice of the jury.

"* * * We must conclude that the judge in this case erred in setting aside the first verdict following individual polling and the discharge of the jury, when the sole reason for doing so was the claimed disparity between the informal agreement within the jury room and the formal, on-the-record, unanimously and individually

reiterated result at trial. * * * This error unequivocally mandates reversal."[11]

A Washington case similar to the within matter, *Kitt v Yakima County,*[12] involved an automobile negligence action in which the jury found that plaintiff suffered damages in the amount of $78,100, but that he was 33-1/3% contributorily negligent. A judgment was entered on the verdict in the amount of $52,061.46. Thereafter, defendant moved for a new trial predicated upon a juror's affidavit that the jury intended to award plaintiff only one-third of the total damages, instead of reducing the award by one-third.

The Washington Court of Appeals upheld the trial court's denial of defendant's motion for a new trial, holding that the jurors' misunderstanding of the comparative negligence instructions inheres in the verdict and is not subject to attack by impeaching affidavits.

Since the contents of the impeaching affidavits in the instant case clearly relate to matters that inhere in the jury verdict, namely, the jurors' seeming inability to understand the formula used in arriving at an award in comparative negligence situations and the jurors' possible intention to award the net sum of $15,000, the jury verdict cannot be altered or set aside unless the affidavits are applied to correct "clerical errors".

In 76 Am Jur 2d, Trial, § 1225, p 179, the concept of an incorrectly recorded verdict was discussed:

"The general principle that the statements of jurors

[11] *Id.,* pp 262-263. Also, see ABA Standards for Criminal Justice (2d ed), vol III, Standard 15-4.7, pp 15.152-15.162.

[12] 23 Wash App 548; 596 P2d 314 (1979), *rev'd on other grounds* 93 Wash 2d 670; 611 P2d 1234 (1980).

will not be received to establish their own misconduct or to impeach their verdict is, as a rule, considered as not preventing the reception of their evidence as to what really was the verdict agreed on, in order to prove that through mistake or otherwise, it has not been correctly expressed, although there is authority to the effect that even a mistake of a clerical nature in the verdict cannot be proved by the testimony of the jurors.· Under this exception to the general rule, the testimony of jurors is admissible to prove a mistake in the entry of the verdict; and on similar principles, where the foreman delivers a verdict erroneously it may be set aside on the affidavits of the jurors. It may be set aside as well where the jury return a verdict for the wrong party.

"To warrant a change in the written verdict and final judgment thereon, proof of the mistake must be clear beyond peradventure, and if the slightest doubt lurks in the mind of the judge, he should confine relief to the granting of a new trial. Indeed, some courts incline to the view that a new trial is the only relief after the jury have separated, although other courts have held that on a sufficiently clear showing of the mistake and of what was the verdict agreed on and intended to be expressed, the court may substitute a clear expression for the incorrect one, and enter judgment accordingly." (Footnotes omitted.)

In our view, the trial court erred in reducing this jury verdict. The impeaching affidavits and the testimony presented at the evidentiary hearing establish that the award of $50,000 in damages and the 30% allocation of fault to plaintiff were not incorrectly recorded. Immediately after trial, when the jurors were carefully questioned by the trial judge and individually polled, they affirmed unconditionally their foreman's recitation of the jury verdict. In this case, the questioning should have stopped right there. It was not within the jury's province to change its mind once the verdict was lawfully received.

At the evidentiary hearing, none of the jurors claimed that they intended to find that the percentage of negligence attributable to plaintiff was 70%. The thrust of the jurors' testimony was that they meant to award plaintiff the net sum of $15,000. However, as previously stated, the special verdict form completed by the jurors was in conformity with the oral pronouncement of the verdict. Therefore, we decline to hold that the original verdict was reached by means of the improper recording of either the $50,000 assessment of damages or the 30% allocation of contributory negligence.

The jury's findings in reference to plaintiff's claim, as imparted to the trial court and inscribed on the special verdict form, do not fail to express the conclusion reached by the jurors. Had the jury decided to attribute 70% comparative fault to plaintiff, but by mistake recorded it as 30%, this might be a case for the correction of a verdict owing to a clerical mistake. We do not find this jury verdict to be a clerical mistake.[13]

We are not unmindful of a case primarily relied upon by defendants, *Dunham v Veterans of Foreign Wars Club of Muskegon, Post 446*,[14] where the jury in a slip and fall action found the total amount of the plaintiff's damages to be $31,250 and attributed 75% of the negligence in the case to the plaintiff. After receiving the verdicts and dismissing the jury, the trial court entered a judgment in the amount of $7,812.50, which constituted 25% of the plaintiff's damages. Thereafter, plaintiff's counsel obtained affidavits from three

---

[13] It may well be that the Supreme Court should give consideration to clarifying and simplifying the forms given jurors to use in comparative negligence cases.

[14] 104 Mich App 541; 305 NW2d 260 (1981), *lv den* 412 Mich 912 (1982).

jurors which stated that the jury intended to reach a net award of $31,250 by means of determining damages to be $125,000, with a 75% deduction for the plaintiff's negligence. The trial court denied plaintiff's motions to reconvene the jury and a new trial, but on appeal we remanded the matter to the trial court, presumably for a reconvening and polling of the jury, saying that the written word may not have constituted the true verdict. Apparently, the panel of this Court was influenced by the fact that plaintiff's closing argument to the jury suggested the same figure claimed on appeal to be the amount the jury intended.

We interpret the *Dunham* case as permitting the trial court to reconvene the jury for the sole purpose of determining if a clerical error was committed in the recording of the verdict. We limit the exception to the general rule articulated in *Hoffman, supra,* which permitted the use of impeaching affidavits only where a possible clerical error occurred in the jury's recording of the verdict, to instances where the jury, in fact, mistakenly recorded information relating to the jury verdict. We hold that the mere claim of a jury, through impeaching affidavits, that it intended a different outcome does not, *ipso facto,* require a modification of the verdict by the trial court or the granting of a new trial. We believe that it is good judicial policy to be very sparing in letting jury verdicts be upset when they are valid and proper on their face.

Reversed and remanded for reinstatement of the original verdict.