LEDBETTER v BROWN CITY SAVINGS BANK

Docket No. 76013. Submitted February 8, 1985, at Lansing.—Decided
April 1, 1985.

Susan Ledbetter borrowed $7,200 from the Brown City Savings
Bank to start a dress shop. The original note and the subse-
quent new and renewal notes were secured by the inventory
and fixtures, but not by any real property, mortgage instru-
ments or bank accounts, and the notes did not provide for
setoffs or seizure of funds on deposit with the bank. Ledbetter
defaulted on the notes. Ledbetter and the bank entered into
discussions concerning alternative methods of paying the
amount due under the notes. Douglas K. Orton, president of
the bank suggested that the amount owing on the notes be
incorporated into a rewritten first mortgage or into a new note
secured by a second mortgage on the house owned by Susan
Ledbetter and her husband, Robert Ledbetter. Orton, believing
that the existing first mortgage held by the bank on the
Ledbetter home contained a collateral security clause, informed
the Ledbetters that, in any event, the bank could foreclose on
the home mortgage in order to recover the amount owing on
the defaulted dress shop notes. The Ledbetters requested a copy
of the mortgage. Orton then discovered that the mortgage did
not contain a collateral security clause, but, rather than in-
forming the Ledbetters of that fact or responding to the request
for a copy of the mortgage, Orton left on vacation. The Ledbet-
ters then asked Richard Bucklew, vice-president of the bank,
for a copy of the mortgage. When Bucklew determined that the
mortgage did not contain a collateral security clause, he made
a copy of the mortgage, inserted a collateral security clause
into the copy of the mortgage, and then made a copy of the
altered copy and sent it to the Ledbetters. The Ledbetters
determined that the mortgage did not in fact contain a collat-
eral security clause by comparing the bank supplied copy with
the copy of the mortgage filed with the register of deeds. When

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 76 Am Jur 2d, Trial § 1219 et seq.
[3] 5 Am Jur 2d, Appeal and Error § 545 et seq.
[4] 22 Am Jur 2d, Damages §§ 195-198, 241, 242.

the Ledbetters refused to execute a second mortgage, the bank seized as an offset for the money due on the dress shop notes all the funds in the five accounts with the bank in which Susan Ledbetter had a joint interest, leaving the Ledbetter family penniless.

The Ledbetters brought an action in Sanilac Circuit Court against the Brown City Savings Bank, Douglas Orton and Richard Bucklew, pleading counts of fraud, conversion and intentional infliction of mental distress and seeking both compensatory and exemplary damages. Later counts of negligence and wilful and wanton misconduct were added. The trial court, Allen E. Keyes, J., dismissed the fraud and conversion counts. The jury returned special verdicts in favor of plaintiff Susan Ledbetter as follows: on the intentional infliction of emotional distress count, $500 against Orton and $2,500 against Bucklew; on the negligence count, $5,000 against the bank, $500 against Orton, and $5,000 against Bucklew; and, on the wilful and wanton misconduct count, $50,000 against Bucklew. The jury also found plaintiff Susan Ledbetter to be 40% negligent. The jury was polled and discharged. Thereafter, defense counsel obtained affidavits of two jurors attesting to the fact that it was their belief that the entire amount awarded by the jury would be reduced by 40%. A hearing was held to determine whether all the jurors believed that the entire award, rather than just the negligence award, would be reduced by 40%. The court then ordered the jury to redeliberate on the question of damages, and the jury returned verdicts on the intentional infliction of emotional distress and the wilful and wanton misconduct counts which were 40% less than the original verdicts on those counts. Judgment was entered on the amended verdicts. Plaintiff Susan Ledbetter appealed. Defendants cross-appealed. *Held:*

1. The trial court erred in reconvening the jury and permitting the jury to reconsider the question of damages. Since any misunderstanding by the jury as to the application of the doctrine of comparative negligence was an inherent part of the original verdict, and since there were no allegations that the jury had not agreed to the original verdict, that there had been external influences on the jury or that, through clerical error, the written verdict rendered was not the true verdict of the jury, the trial court should not have allowed the jury to impeach its original verdict. The original verdict must be reinstated.

2. The giving of both exemplary damages under the wilful misconduct count and damages under intentional infliction of

emotional distress count cannot be said to have resulted in plaintiff's receiving double damages for mental anguish, since the trial court's instructions on emotional distress clearly limited damages on that count to damages for physical injuries which resulted from the intentional infliction of emotional distress.

3. The trial court properly permitted testimony relative to the bank's off-setting the funds in the bank accounts against the dress shop debt. While the seizure of those funds by the bank did not give rise to an action for fraud or conversion, testimony relative to that conduct was relevant to the resolution of the question of whether there had been intentional infliction of emotional distress.

4. There was sufficient evidence to establish a jury question as to whether there had been intentional infliction of emotional distress.

Affirmed in part; reversed in part.

1. JURY — IMPEACHMENT OF JURY VERDICT — AFFIDAVITS OF JURORS.

Affidavits of jurors are not admissible for impeaching their verdict where the matters controverted by the affidavits inhere in the verdict; but such affidavits are admissible where the claim is that there was no agreement by the jury on a verdict, that the jury's verdict was the result of external influences or that, through clerical error, the written verdict returned by the jury was not the true verdict of the jury.

2. JURY — IMPEACHMENT OF JURY VERDICT — DAMAGES — COMPARATIVE NEGLIGENCE.

A jury verdict should not be set aside on the basis of juror affidavits that the damages found by the jury on counts for intentional infliction of emotional distress and wilful and wanton misconduct were based on the belief that those damages would be reduced by the percentage of negligence of the plaintiff found by the jury, since any misunderstanding by the jury relative to the application of the doctrine of comparative negligence inheres in the verdict and thus is not subject to impeachment by affidavit after the jury has been discharged.

3. APPEAL — PRESERVING QUESTION.

The rule that the Court of Appeals will not ordinarily consider an issue raised for the first time on appeal is not inflexible and will not be applied where the issue is one of law concerning which the necessary facts have been presented.

4. DAMAGES — EXEMPLARY DAMAGES — MENTAL DISTRESS — DOUBLE RECOVERY OF DAMAGES.

Separate awards of exemplary damages on a wilful and wanton

misconduct claim and damages on an intentional infliction of emotional distress claim do not result in an impermissible double recovery where the trial court by its instruction to the jury limits the recovery on the intentional infliction of emotional distress claim to damages for any physical injury which was a result of the mental distress, since under such an instruction the jury's separate awards could not result in a double recovery for mental pain and anguish.

*John M. Peters,* for plaintiff.

*Morrice, Lengemann & Rickard, P.C.* (by *John L. Lengemann* and *Marilyn J. Greener),* for defendants and cross-appellants.

Before: DANHOF, C.J., and T. M. BURNS and BEASLEY, JJ.

PER CURIAM. Plaintiff Susan Ledbetter appeals as of right the trial court's judgment which reduced an initial jury verdict awarded in her favor. Defendants cross-appeal from the judgment entered against them.

In 1978, plaintiff Susan Ledbetter borrowed $7,-200 to start a dress shop. This loan was renewed five times, with a new promissory note being drawn each time. Each note was secured by inventory and fixtures on hand or after-acquired, but not by any real property, mortgage instruments or bank accounts. While the notes allowed the bank, in case of default, to declare the indebtedness immediately due and payable, they did not provide for any setoffs or seizure of funds on deposit.

When plaintiff Susan Ledbetter closed the store for financial reasons in April, 1980, and defaulted upon the loans, defendant bank did not proceed against the collateral, but, rather, later seized the bank accounts on deposit. Defendant Orton, president of the bank, stated that this was done in accordance with the language on the notes which

granted the bank the right to pursue any legal method approved by the state.

Initially, there were discussions concerning alternative methods of paying the notes. One suggestion was to incorporate the debts into the first mortgage held by the bank on the house and lower the interest rate on the mortgage, based on defendant Orton's belief that the mortgage contained a collateral security clause which, in any event, would permit the bank to foreclose on the mortgage in order to recover the amounts owed on the dress shop notes. Subsequently, Orton discovered that this was not the case, but failed to so inform plaintiffs. Nevertheless, defendant Bucklew, vice-president of defendant bank, inserted a collateral security clause into plaintiffs' mortgage. Upon default, defendant Bucklew, as previously noted, debited the funds on deposit with the bank in five different accounts in which Susan Ledbetter held a joint interest to offset the debts and, thereafter, in December, 1981, commenced foreclosure proceedings, refusing to accept any further late payments.

Plaintiff Susan Ledbetter testified at trial that, during the course of discussions with defendant Orton, he mentioned on approximately four occasions the existence of a collateral security clause in the mortgage. Although she had asked him for a copy of the mortgage, she stated that he never honored this request. Subsequently, she contacted defendant Bucklew who informed her that the previous offer to take out a new loan of $25,000 and incorporate this into the mortgage, along with the note obligation, exceeded an acceptable percentage of the value of their home. At this time, she asked for and received a copy of the mortgage, whereupon she noticed that the collateral security clause had been inserted into the mortgage. That

this clause was so inserted was verified by the mortgage copy filed with the register of deeds.

This action ensued, with plaintiffs alleging fraud, conversion, and the intentional infliction of emotional distress. An amended complaint was filed additionally alleging gross negligence, but that count was amended by stipulation into a count alleging ordinary negligence and a count alleging wilful and wanton misconduct. At trial, the counts relating to fraud and conversion were dismissed. The jury returned a verdict in favor of plaintiff Susan Ledbetter but found no cause of action with respect to plaintiff Robert Ledbetter. Defendants then moved to reduce each of the separate verdicts, including the verdicts on the intentional infliction of emotional distress count and the wilful and wanton misconduct count by 40%, contending that juror affidavits had been obtained which indicated that two of the jurors had misunderstood the application of plaintiffs' comparative negligence. The lower court reconvened the jury, conducted voir dire and sent the jury to deliberate again. A second verdict reduced plaintiff's aggregate awards by 40%. A judgment in favor of plaintiff Susan Ledbetter was entered on December 30, 1983, in a total amount of $38,100, plus costs and interest.

Plaintiff argues that the unanimous verdict followed by individual polling and discharge ended the function of the jury and that the jurors' affidavits raise no allegations of outside influence or clerical error which would allow for impeachment of the original verdict. Plaintiff further posits that the jury violated its instructions (as well as Michigan law) by applying comparative negligence to reduce the damages awarded for wilful and wanton misconduct and intentional infliction of emotional distress.

Michigan, like most other jurisdictions, adheres to the general rule that the affidavits of jurors regarding their own misconduct are not admissible for the purpose of impeaching their verdict. *Mandjiak v Meijer's Super Markets, Inc,* 364 Mich 456, 460; 110 NW2d 802 (1961). However, in *Routhier v Detroit,* 338 Mich 449; 61 NW2d 593 (1953), the Supreme Court, though recognizing the general rule, observed that there may be instances where there was, in fact, no agreement reached by the jurors, thereby resulting in the absence of any verdict. According to the Court, juror affidavits are competent to show this latter defect. The Court noted:

"'Only when jurors have agreed to the verdict are they estopped from impeaching it. Consequently, affidavits that they never assented to it are admissible. Thus, where some of the jurors have not in fact agreed to the verdict, but, being persuaded by the majority of their fellows that it was only necessary for a majority to agree, failed to object to it when it was returned, their affidavits are admissible to show that they had never consented to the verdict.'" 338 Mich 452.

In *Routhier,* it was held not to be improper for the trial court to set aside the jury verdict on the day after rendition of the verdict where the jury was recalled and polled and it was discovered that one of the jurors had not agreed to the jury verdict.

More recently, in *Hoffman v Monroe Public Schools,* 96 Mich App 256; 292 NW2d 542 (1980), *lv den* 409 Mich 931 (1980), in clarifying the general distinctions between mistakes inherent in the verdict and those vitiating the verdict itself, this Court held that:

"In all cases, whether civil or criminal, once a jury

has been polled and discharged, its members may not challenge mistakes or misconduct inherent in the verdict. After that point, oral testimony or affidavits by the jurors may only be received on extraneous or outside errors (such as undue influence by outside parties), or to correct clerical errors or matters of form. See * * * *Harrington v Velat*, 395 Mich 359; 235 NW2d 357 (1975), *Hampton v Van Nest's Estate*, 196 Mich 404; 163 NW 83 (1917), *Marchlewicz v Stanton*, 50 Mich App 344; 213 NW2d 317 (1973). Information on extraneous errors has always been permissible under the 'Iowa rule', since it does not relate directly to the thought processes or inner workings of the jury. We carve out an exception for clerical errors since, presumably, the correct information will already exist on the record and it will merely be a matter of conforming the written judgment to the earlier in-court statements; no invasion of the juror's room or minds will be necessitated." 96 Mich App 261.

In *Dunham v Veterans of Foreign Wars Club of Muskegon, Post 446,* 104 Mich App 541; 305 NW2d 260 (1981), *lv den* 412 Mich 912 (1982), this Court recognized the clerical-error exception in allowing the jury to be reconvened where "the verdict as transmitted to the written word did not constitute the true verdict". 104 Mich App 544.

In *Brillhart v Mullins,* 128 Mich App 140; 339 NW2d 722 (1983), this Court held that the trial court erred in reconvening the jury to correct an alleged mistake in the amount of the verdict. Before entry of the judgment, defendant filed a motion for new trial or remittitur, to which he appended affidavits from seven jurors indicating that they thought they were awarding plaintiff 30% of $50,000, or $15,000. The trial court ordered the jury to be reconvened to determine whether a mistake had been made. At the evidentiary hearing, each juror testified that he or she had agreed that plaintiff was entitled to $15,000. The trial

court granted defendant's motion for remittitur, reducing a $35,000 verdict to $15,000. This Court reversed, stating that "the jurors' misunderstanding of the comparative negligence instruction inheres in the verdict and is not subject to attack by impeaching affidavits". 128 Mich App 151.

In the case *sub judice,* the jury was presented with a verdict card drafted by defendants. The jury returned the following unanimous verdicts in favor of plaintiff:

"Intentional Infliction of Emotional Distress
   "Against Brown City Savings Bank  —0
   "Against Douglas Orton           —$    500.00
   "Against Richard Bucklew       —$  2,500.00
"Negligence
   "Against Brown City Savings Bank  —$  5,000.00
   "Against Douglas Orton           —$    500.00
   "Against Richard Bucklew       —$  5,000.00
"Wilful and Wanton Misconduct
   "Against Brown City Saving Bank  —0
   "Against Douglas Orton           —0
   "Against Richard Bucklew       —$50,000.00"

It also determined that plaintiff was 40% negligent. After this verdict was affirmed by individual polling, the panel was discharged. Thereafter, defense counsel obtained affidavits from two jurors attesting to the fact that it was their belief that the entire amount of monies awarded on the verdict form would be reduced by 40%.

A hearing was then held to determine whether all the jurors, in finding plaintiff 40% negligent, understood that this percentage of negligence could only be set off against the amount awarded under the negligence count and not against the amounts awarded under the counts of intentional infliction of emotional distress and wilful and wanton misconduct. After the trial court instructed

the jury to deliberate the issue, it reduced, by 40%, its original award of damages on the intentional infliction of emotional distress and wilful and wanton misconduct counts. We believe that the lower court erred in reconvening the jury and permitting the jury to alter the verdicts.

We note initially that, according to *Hoffman, supra,* the polling and discharging of the jury terminated its function as a jury. Moreover, the mistake involved herein related to a misunderstanding of how to apply comparative negligence law which, pursuant to *Brillhart, supra,* inheres in the verdict. This mistake did not involve clerical errors for which an exception to the general rule has been recognized. Rather, the mistake here is more readily compared to those which address the thought processes and inner workings of the jury and, as such, is beyond challenge. *Hoffman, supra.* Accordingly, we hold that the original verdict should be reinstated and, therefore, we need not address plaintiff's claim that the jury violated its instructions and Michigan law by using plaintiff's comparative negligence to reduce the damages awarded for defendants' intentional infliction of emotional distress and wilful and wanton misconduct.

Next, defendants argue on cross-appeal that the award for damages for defendants' wilful and wanton misconduct constitutes an award for exemplary damages which, in addition to the award for intentional infliction of emotional distress, provides plaintiff a double recovery. Defendants further assert that the award for damages for the intentional infliction of emotional distress and negligence similarly constituted a double recovery for the same injuries.

We note preliminarily that defendants failed to raise the issue of double compensation below.

While such failure normally precludes this Court from considering an issue raised for the first time on appeal, this rule is not inflexible and will not be applied "where the issue is one of law concerning which the necessary facts have been presented". *Loper v Cascade Twp,* 135 Mich App 106, 111; 352 NW2d 357 (1984). This condition is present and therefore the issue herein merits consideration.

Exemplary damages are compensation to the plaintiff for injuries to feelings, not as punishment to the defendant. *Veselenak v Smith,* 414 Mich 567; 327 NW2d 261 (1982). In *Veselenak,* the Supreme Court discussed the conduct which gives rise to the the threshold of injured feelings necessary to support an award of exemplary damages:

"This court has held that the act or conduct must be voluntary. This voluntary act must inspire feelings of humiliation, outrage, and indignity. The conduct *must be malicious or so wilful and wanton as to demonstrate a reckless disregard of plaintiff's rights."* (Citations omitted; emphasis added.) 414 Mich 574-575.

Although the above illustrates that a finding of wilful and wanton misconduct would appear to incorporate much the same conduct as would support an award of exemplary damages, we note that an award of actual damages may now also include compensation for shame, mortification, mental pain and anxiety. *Veselenak, supra,* p 574. Consequently, the instant case cannot necessarily be said to involve an award of exemplary damages, especially where the jury did not specifically award such. An award of damages does not become exemplary damages merely because it compensates for some form of mental anxiety. At issue is whether there was a double recovery for the same injury, not the label attached.

Similarly, we agree with defendants that an award for the intentional infliction of emotional distress shares elements common to a claim that defendants acted wilfully and wantonly, see *Holmes v Allstate Ins Co,* 119 Mich App 710, 714-715; 326 NW2d 616 (1982), *lv den* 417 Mich 1018 (1983), for a discussion of the elements of intentional infliction of emotional distress; but, the key inquiry in ascertaining whether these two awards amounted to a double recovery is as to what injury is sought to be compensated. The nature of the conduct, *i.e.,* "the source of the mental distress and anguish", is of little relevance. What matters is whether *all* mental distress was compensated in the one award. See generally discussion in *Veselenak, supra,* pp 576-577.

In this connection, the trial court's instructions to the jury with respect to negligence and the intentional infliction of emotional distress emphasized that damages for emotional or mental distress were only proper where "bodily harm resulted", that a finding of emotional distress must be followed by a determination that plaintiff was "harmed or damaged", and that plaintiff had the burden of showing "a definite physical injury". In other words, the damage award for these counts was restricted to physically-manifested injury. As the trial court's instructions stated, the injury sought to be compensated by the $2,500 award against defendant Bucklew was "the physical injury as a result of mental distress".

Mental anguish damages, however, are not so circumscribed. A plaintiff is not limited to recovery for physical pain and anguish, but, rather, is entitled to damages for mental pain and anxiety which naturally flow from the injury, *i.e.,* for shame, mortification, and humiliation. *Beath v Rapid R Co,* 119 Mich 512, 517-518; 78 NW 537

(1899); *Grenawalt v Nyhuis,* 335 Mich 76, 87; 55 NW2d 736 (1952); *Veselenak, supra,* p 574. As the Supreme Court stated in *Veselenak:*

"[J]uries are not asked to differentiate between mental states, such as shame, mortification, humiliation and indignity. Juries are asked to compensate mental distress and anguish, which flows naturally from the alleged misconduct and may be described in such terms as shame, mortification, humiliation and indignity. In addition, if the plaintiff is being compensated for *all* mental distress and anguish, it matters not whether the source of the mental distress and anguish is the injury itself or the way in which the injury occurred." (Emphasis in original.) 414 Mich 576-577.

Therefore, when the trial court instructed the jury that exemplary damages could be awarded to compensate for plaintiff's outrage, mortification, humiliation, and indignity caused by defendants' malicious, wilful and wanton conduct or by conduct that involved elements of fraud or wanton and reckless disregard for the plaintiff's rights, it was clear that the injury sought to be compensated was the *mental* pain and anguish she suffered, which was not identical to the prior award for physical injury. Thus, the award of $50,000 was proper and is to be viewed as a statement by the jury that plaintiff suffered mental pain and anguish for which $50,000 was just compensation.

Unlike *Veselenak,* where the Supreme Court noted that "if the jury deliberated as instructed * * * the giving of an exemplary damages instruction permitted [plaintiff] to be doubly compensated for one injury", 414 Mich 576, such was not the case here in light of the lower court's emphasis on the physical aspects of the injury in instructing the jury on intentional infliction of emotional. distress. This is also unlike *Veselenak* in that

there the jury specifically awarded both compensatory and exemplary damages so that there was some question concerning the extent to which mental anguish was compensated in the award of ordinary damages. We find no double recovery. Accordingly, the original verdict should be reinstated in full.

Defendants further maintain that the award for negligence and intentional infliction of emotional distress against defendants Bucklew and Orton were similarly awards of double recovery since they both were awards for mental distress. However, the allegation of negligence included, among other things, damages for injury to plaintiff's reputation. Moreover, the trial court gave the same instructions to the jury on these two counts with respect to damages, so that these two awards, as noted above, represent the physical manifestation of the injury sustained, irrespective of the source, and cannot be said to constitute a double recovery. Inasmuch as this claim was supported by the evidence and the award against defendant Orton for negligence amounted to only $500, we will not speculate as to what elements of injury were contemplated by this award.

We finally note that much of the confusion concerning damages was due to the form of the verdict card, which specified the nature of the conduct without stating the injury that each award sought to compensate. Because defendants devised the verdict card, in addition to the lack of objection to the instructions and the nature of the awards, defendants are in a weak position to challenge the award.

Defendants' second argument on cross-appeal is that the trial court erred in permitting plaintiff's counsel to submit the issue of "off-setting funds" to the jury, even though it had previously dismissed

the count of conversion which had been based on defendants' off-setting of funds from plaintiff's and her children's accounts.

In plaintiff's original complaint, she alleged that defendants' unauthorized withdrawals of plaintiff's funds from her personal savings account amounted to conversion and intentional infliction of emotional distress. Similarly, in her amended complaint she alleged that defendants both negligently and wilfully and wantonly removed funds from her account including the accounts of her children. The trial court ruled that the testimony concerning setoffs from the children's accounts was irrelevant and granted defendants' motion for summary judgment as to the claim alleging conversion. But a finding that the setoffs would not support a claim of conversion does not preclude consideration of those acts as they relate to other allegations. Indeed, plaintiff testified that she was left penniless and completely and emotionally devastated by such setoffs. In other words, this was part of the conduct alleged to have constituted the intentional infliction of emotional distress. Moreover, the issue of negligence remained and the manner of setoff was particularly relevant in determining whether the bank's actions were reasonable, as well as in determining whether defendant Bucklew notified plaintiff prior to off-setting her funds. This claim is without merit.

Finally, defendants argue that the trial court erred by denying defendants' motion for a directed verdict on the intentional infliction of emotional distress count, since the testimony did not establish that defendant, by inserting the collateral security clause into the mortgage, intentionally inflicted emotional distress. We disagree.

The testimony established that, although defen-

dant Orton had represented to plaintiff that her mortgage contained a collateral security clause which would allow the bank to foreclose on the house in the event of default on the notes, such was not the case. Instead of notifying plaintiff of this error, he left the matter unsettled and went on vacation. Such representations by defendant Orton caused plaintiff distress since she believed that the bank could repossess their house at any time. Her request for a copy of the mortgage went unheeded until defendant Bucklew intervened. Upon realizing that the mortgage did not contain the collateral security clause, Bucklew photocopied the mortgage, inserted the clause and mailed it to plaintiffs, intending it to appear as if the mortgage on file at the bank contained the typed-in clause. It was established that this was a highly irregular procedure. We believe this testimony establishes a genuine issue of fact as to whether such constituted extreme and outrageous conduct. There was also reasonable dispute as to whether this action was intentional or *reckless.*

Affirmed in part; reversed in part.